

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2007

# Peloro v. FBI

Precedential or Non-Precedential: Precedential

Docket No. 04-4334

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Peloro v. FBI" (2007). *2007 Decisions.* Paper 1021.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1021

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4334
_____

FILOMENA PELORO,
aka FILOMENA DELOMO


v.


UNITED STATES OF AMERICA; FEDERAL BUREAU OF
INVESTIGATION;
RICHARD W. HILL; R.H. RESEARCH, INC.

Filomena Peloro,
Appellant


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-04322)
District Judge: Honorable Dickinson R. Debevoise

Submitted under Third Circuit LAR 34.1(a)
March 28, 2006
_____

Before: McKEE and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>,
and POLLAK,[*] <u>District</u> <u>Judge</u>.

———

(Filed : May 29, 2007)

———

Frank Agostino, Esq.
Calo Agostino, P.C.
14 Washington Place
Hackensack, New Jersey 07601

<u>Counsel for Appellant</u>

Peter G. O'Malley, Esq.
Office of the United States Attorney
970 Broad Street
Newark, New Jersey 07102

<u>Counsel for Appellees United States of America and Federal</u>
<u>Bureau of Investigation</u>

Hayden Smith, Jr., Esq.
McCarter & English, LLP
100 Mulberry Street
Newark, New Jersey 07102

———

[*] Honorable Louis H. Pollak, District Judge for
the United States District Court of the Eastern
District of Pennsylvania, sitting by designation.

Counsel for Appellees Richard W. Hill and R.H. Research, Inc.

———

OPINION OF THE COURT

———

POLLAK, District Judge:

The controversy now before this court presents aspects of litigation that has, over the past decade, engaged both the United States Bankruptcy Court for New Jersey and, in two different law suits, the United States District Court for New Jersey. The current appeal by Filomena Peloro[1] seeks review of the District Court's decision in the second of the two suits brought before that court. In that suit, filed on September 12, 2003, Ms. Peloro sought to recover certain securities in accounts that had been

---

[1] Ms. Peloro is also referred to in the record as Filomena Peloro del Olmo or Filomena P. del Olmo. For consistency, we refer to her throughout as "Peloro" or "Ms. Peloro."

3

maintained by First Interregional Equity Corporation ("FIEC"), a registered securities brokerage firm which was the subject of liquidation proceedings initiated in 1997 by the Securities and Exchange Commission ("SEC"), pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa, et seq.

Ms. Peloro's 2003 suit alleged that the United States and the Federal Bureau of Investigation ("federal defendants") had improperly seized and retained custody of several securities. She also alleged that Richard W. Hill ("Trustee"), the Trustee in the FIEC liquidation proceedings, and R.H. Research, Inc. ("R.H.") had, in contravention of state law, converted the securities. Ms. Peloro sought return of the securities and associated relief.

The District Court (1) granted the federal defendants' motion to dismiss for failure to state a claim upon which relief could be granted and (2) granted summary judgment in favor of

4

the Trustee and R.H. on the basis of claim and issue preclusion. It is from these rulings that Ms. Peloro appeals.

To put this appeal in understandable context, we begin by outlining the underlying facts and next we describe the somewhat tortuous course of the litigation. We then turn to an analysis of the issues posed by the appeal.

## I.

Filomena Peloro maintained both an individual account and a joint account in her name and the name of her father, Donato Peloro, who is now deceased, at FIEC. On or about October 8, 1996, Ms. Peloro mailed four securities to her sales representative at FIEC's Millburn, New Jersey, office.

In March 1997, the SEC commenced an action against FIEC in the United States District Court for the District of New Jersey, alleging FIEC's participation in a fraudulent scheme and seeking protection for FIEC's customers under SIPA. As part

of the government's investigation, the FBI seized the four securities Ms. Peloro had mailed to FIEC's Millburn branch. The securities were contained in a single envelope and had not been allocated to any FIEC customer account when the FBI seized them.

The four securities are described in the record as follows: (1) Ashland GA URFA 8% due 8/1/2010, registered to Donato Peloro & Filomena Peloro for $20,000 ("customer name security"); (2) Ashland Cty Ohio 7.5% due 8/1/2001, registered to bearer for $10,000 ("Ashland"); (3) Brevard Cty 8.375% due 3/1/2012, registered to bearer for $15,000 ("Brevard"); (4) Coleman Hsg Dev 8% due 11/1/2006, registered to bearer for $10,000 ("Coleman").[2] The first of these is a "customer name

---

[2] Since the Ashland GA URFA 8% "customer name security" was ultimately returned to Ms. Peloro, *see* text *infra*, the disposition of that security was not at issue in her claims before the District Court, nor is it in issue on this appeal.

6

security" under SIPA—a security that is held for a customer's account on the date that the SIPA action is filed, is registered in the customer's name, and is only negotiable by the customer. *See* 15 U.S.C. § 78*lll*(3). The other three are "bearer bonds" or "certificated securities" which are negotiable by any bearer.

On March 10, 1997, in response to a filing by the Securities Investor Protection Corporation ("SIPC")[3], the District Court decreed that FIEC's customers were in need of protection under SIPA, *see* 15 U.S.C. § 78eee(b)(1)–(2), appointed Richard W. Hill, Esq. as Trustee for the liquidation of FIEC's business, *see id.* § 78eee(b)(3), and removed the case to

---

[3] "The Securities Investor Protection Corp. (SIPC) was established by Congress as a nonprofit membership corporation for the purpose, *inter alia*, of providing financial relief to the customers of failing broker-dealers with whom they had left cash or securities on deposit." *Sec. Investor Prot. Corp. v. Barbour*, 421 U.S. 412, 413 (1975).

the United States Bankruptcy Court for the District of New Jersey. *See id.* § 78eee(b)(4) ("Upon the issuance of a protective decree and appointment of a trustee, . . . the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under Title 11."); *see also In re First Interreg'l Equity Corp.*, 290 B.R. 265, 268 (Bankr. D.N.J. 2003) (recounting procedural history of FIEC's case).

After removal to the Bankruptcy Court, the Trustee published notice of the liquidation of FIEC's business on May 19, 1997 and mailed the appropriate notice and claim forms in accordance with 15 U.S.C. § 78fff-2(a)(1). The May 19 liquidation notice advised that, in accordance with 15 U.S.C. § 78fff-2(a)(3) and a May 9 order of the Bankruptcy Court, no claims would be allowed unless filed within six months of the date of the notice—that is, no later than November 19, 1997, the

8

so-called "bar date." The customer claim form specified that a separate claim form should be filed for each account.

The parties agree that Ms. Peloro received actual notice with respect to her individual account. On July 2, 1997, she filed a timely customer claim for her individual account; the Trustee valued the individual account at $993,774.95 and satisfied it in full. However, Ms. Peloro did not receive actual notice of the liquidation or the bar date in regard to her joint account, because that account was empty at the time the notice and claim forms were sent. *See* D. Ct. Op.[4] 5, App. 7a ("[B]ecause there were no positions or activity in Ms. Peloro's Joint Account, the Joint Account did not satisfy the criteria for being mailed a claim package."); *cf.* 15 U.S.C. § 78fff-2(a)(1).

---

[4] Citations herein to the District Court Opinion ("D. Ct. Op.") refer to the October 14, 2004 District Court opinion in Ms. Peloro's 2003 lawsuit.

9

As noted above, none of the four disputed securities had been deposited into either of Ms. Peloro's accounts prior to the institution of the SIPA liquidation proceedings. On or about July 24, 1997—more than two months after the notice and claim forms had been mailed to FIEC's customers—the FBI returned Ms. Peloro's seized securities to the Trustee by forwarding them to R.H., a firm which the Trustee had retained to assist with the liquidation of FIEC. All four securities—the three bearer bonds and the one customer name security—were then allocated by appellees R.H. and the Trustee to Ms. Peloro's joint account because all were contained in the same envelope and the customer name security was registered jointly to Ms. Peloro and her father, Donato Peloro.[5] Ms. Peloro was advised by the

---

[5] Ms. Peloro maintains that at no point did she authorize the deposit of any of the certificated securities, which were bearer instruments, into any of her FIEC accounts, and that R.H. "negotiated the Certificated Securities and

10

Trustee—by letter dated November 10, 1997—to file any outstanding claims by the November 19th bar date. (The letter did not, however, refer specifically to the joint account. *See* App. 230a–232a.) Peloro did not submit any claims for the four securities, or for her joint account more generally, before the bar date. She contends that, as an elderly woman without technical training, she did not know anything about the location or disposition of the securities until July 1999.

On July 21, 1999, as required by 15 U.S.C. § 78fff-2(c)(2), Ms. Peloro's customer name security was returned to her. Ms. Peloro claims that it was on receipt of the

allocated them to the Joint Account" without authorization and without notifying her. Appellant's Br. 5. The Trustee and R.H. "admit that R.H., without notifying Ms. Peloro, allocated . . . the Certificated Securities to the joint account and caused them to be negotiated." Answer of Defs. Trustee & R.H. to Am. Compl. ¶ 28, App. 43a.

11

accompanying letter that she realized for the first time that the Trustee or the FBI was in possession of the remaining securities (i.e., the three bearer bonds). By letter dated October 25, 1999—almost two years after the bar date—Ms. Peloro filed an informal proof of claim for "two bonds totalling $20,000, face value." The Trustee assumed this referred to the Ashland and Coleman securities (two of the certificated securities, with a face value totaling $20,000, *see supra* text at note 2).[6]

On February 8, 2000, the Trustee issued a notice informing Ms. Peloro that the two securities—the Ashland and Coleman securities—had been deposited into her joint account, but that her claim for these bonds was disallowed as untimely. Ms. Peloro never received correspondence regarding the third

---

[6] Ms. Peloro did not object to or contest this assumption. Thus, as the District Court noted, the remaining certificated security—the Brevard Security, with a face value of $15,000—was not put in issue before the Bankruptcy Court.

bearer bond, but states that she learned in June 2003 that it had also been deposited in her joint account.

## II.

Subsequent to her discovery of the location of her securities and the Trustee's rejection of her claim for those securities as untimely, Ms. Peloro engaged in litigation in two fora, seeking the return of her securities. First, she appeared in the ongoing SIPA liquidation proceedings in the Bankruptcy Court, seeking to have the Trustee's decision denying her claim overturned. Second, she filed an independent lawsuit in the District Court, seeking to establish her ownership interest in the securities and to have the securities returned.

### A. Litigation over the bearer bonds in the Bankruptcy Court

On June 17, 2003, the Trustee filed a motion asking the Bankruptcy Court to affirm his rejection of Ms. Peloro's claim

13

for the Ashland and Coleman securities as untimely. Ms. Peloro filed an objection to the Trustee's motion.

Following a hearing on October 28, 2003, the Bankruptcy Court affirmed the Trustee's disposition of Ms. Peloro's claim in an order dated December 10, 2003. In its companion oral opinion, the Bankruptcy Court found that the Ashland and Coleman bonds at issue were "customer property" held by FIEC for Ms. Peloro's account. The court noted that "customer property," as defined by SIPA, includes not only securities actually allocated to customer accounts, but any "cash and securities . . . at any time received, acquired, or held . . . for the securities account of a customer." Bankr. Ct. Op. 14, App. 391a (quoting 15 U.S.C. § 78*lll*(4)). Finding that the Ashland and Coleman securities were "sent to FIEC by Ms. Peloro and received and held there for her account, although not allocated to the joint account until a later date in time," the court held that

14

they "were properly customer property under SIPA." Bankr. Ct. Op. 15, App. 392a.

The Bankruptcy Court observed that this finding was critical, since securities properly designated as customer property were subject to SIPA's mandatory and absolute bar date. Because Ms. Peloro did not file a claim as to the joint account on or before the bar date of November 19, 1997, the court found that her claim for the Ashland and Coleman securities was untimely. The court further held that it lacked equitable authority to allow a late-filed claim, and that Peloro's claim for the joint account could not be considered an amendment to her timely-filed individual account claim.

Finally, noting that Ms. Peloro had asked the Bankruptcy Court to "preserve her rights to pursue her claims on the joint account [in her then-pending District Court action]," Bankr. Ct. Op. 20, App. 397a, the Bankruptcy Court concluded:

15

> As to issues of preservation of her claims, the Court notes that for purposes of this decision the limited issue before the Court is whether or not to affirm the SIPA Trustee's determination of claim and the objections filed thereto. By this decision the Court has determined to affirm the Trustee's determination.
>
> As to Ms. Peloro's request regarding the District Court action, that request is not properly before this court. The court declines to assert jurisdiction over claims that are before another court of competent jurisdiction.

Bankr. Ct. Op. 19–20, App. 397a–398a. While the Bankruptcy Court did not "assert jurisdiction" over the unlawful conversion claims presented in the District Court action (or conduct the evidentiary proceeding Ms. Peloro had requested), it did address the status of the securities in question—finding them to be customer property subject to SIPA—as a predicate to affirming the Trustee's determination that Ms. Peloro's claim was untimely. *See* discussion *supra*. Ms. Peloro did not appeal the Bankruptcy Court's determination.

16

## B. Litigation over the bearer bonds in District Court

As noted above, while her objection to the Trustee's disposition of her claim was pending in the SIPA-based FIEC liquidation proceedings in Bankruptcy Court, Ms. Peloro also commenced an action in the District Court. After the Bankruptcy Court affirmed the Trustee's determination that Ms. Peloro's claim was untimely, Ms. Peloro continued to press her District Court claim seeking return of the certificated securities (the Ashland, Brevard and Coleman bonds) and other relief. As amended October 17, 2003, her District Court complaint named the Trustee, R.H., and also the United States and the FBI as defendants. As to the federal defendants, Ms. Peloro sought the return of the securities seized by the FBI (a) on a state-law theory of unlawful conversion[7] and (b) pursuant to Federal Rule

[7] On appeal, Ms. Peloro does not challenge the dismissal of her conversion claim against the federal defendants. *See* Appellant's Br. 1 n.1.

of Criminal Procedure 41(g), which states that one "aggrieved by an unlawful search and seizure . . . or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). Ms. Peloro also asserted a state-law claim for unlawful conversion against the Trustee and R.H., based on their allegedly unauthorized transfer of her personal property (the certificated securities) into the bankruptcy estate of FIEC, which action allegedly deprived her of the ability to bring a timely SIPA claim for the certificated securities.

On October 14, 2004, the District Court dismissed Ms. Peloro's complaint with prejudice. As to the non-federal defendants, the court granted summary judgment on the grounds that, based on the prior proceedings in the Bankruptcy Court, both claim preclusion and issue preclusion barred Ms. Peloro's conversion claim against the Trustee, while non-mutual issue preclusion barred her claim against R.H. As to the federal

18

defendants, the court granted a 12(b)(6) motion to dismiss for failure to state a claim, concluding that no relief could be granted because the federal defendants could not return the securities which they no longer possessed, and sovereign immunity barred any award of money damages against the federal defendants.

Ms. Peloro filed a timely appeal of the District Court's October 14, 2004 final order.

## III.

SIPA vests "exclusive jurisdiction" over "any suit against the [SIPA] trustee with respect to a liquidation proceeding" in the federal court in which the SIPC filed its application for a protective decree—in this case, the New Jersey District Court. 15 U.S.C. § 78eee(b)(2)(A). However, the Trustee and R.H., contended in the District Court that the court lacked subject matter jurisdiction over Ms. Peloro's claim against the Trustee;

instead, they argued, the "exclusive jurisdiction" conferred by § 78eee(b)(2)(A) was transferred to the New Jersey Bankruptcy Court by virtue of the District Court's order removing the SIPA liquidation proceedings to the Bankruptcy Court. Although appellees do not press this argument on appeal, "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the [district] court[] in a cause under review, even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (internal quotation marks omitted). We need not linger over the issue, however, as we are persuaded by the District Court's thorough jurisdictional analysis. *See* D. Ct. Op. 10, App. 12a (concluding that, "[b]y referring the [SIPA] matter to a bankruptcy court, the district court does not divest itself of jurisdiction," but rather confers "*concurrent* jurisdiction" on the bankruptcy court); *see also Trefny v. Bear Stearns Sec. Corp.*,

20

243 B.R. 300, 324 (S.D. Tex. 1999) ("Because Congress could not have intended to extend a bankruptcy court's jurisdictional reach beyond permissible bounds, Congress did not intend the exclusive jurisdiction provision in 78eee(b) to preclude the litigation of every case involving the SIPA in a forum other than a bankruptcy court.").[8]

As to the federal defendants, the District Court had subject matter jurisdiction because Ms. Peloro's claims were filed in part under Rule 41(g) of the Federal Rules of Criminal

---

[8] Although the District Court did not explicitly analyze the question of jurisdiction over Peloro's claims against R.H., we find that the District Court had jurisdiction over those claims as well, either: (1) under 15 U.S.C. § 78eee(b)(2)(A), as a suit against the Trustee (because R.H. was, for jurisdictional purposes, identified with the Trustee); (2) under the District Court's "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b), as incorporated in SIPA by 15 U.S.C. § 78eee(b)(2)(A)(iii); or (3) under the District Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

21

Procedure. "Such an action is treated as a civil proceeding for equitable relief," *United States v. Bein*, 214 F.3d 408, 411 (3d Cir. 2000), and the district court has jurisdiction over the action under 28 U.S.C. § 1331. *See also United States v. Martinson*, 809 F.2d 1364, 1366–1367 (9th Cir. 1987) ("A district court has jurisdiction to entertain [Rule 41(g)] motions to return property seized by the government [even] when there are no criminal proceedings pending against the movant.").[9]

This court has jurisdiction over Ms. Peloro's appeal pursuant to 28 U.S.C. § 1291. "On appeal, our review of the district court's grant of summary judgment in favor of the Appellees on the ground of issue preclusion is plenary." *Dici v.*

---

[9] "As a result of . . . 2002 amendments, the previous Fed. R. Crim. P. 41(e) now appears with minor stylistic changes as Rule 41(g). For consistency, we will refer only to [Rule] 41(g) even though . . . most of the relevant case law refers to the previous rule." *United States v. Albinson*, 356 F.3d 278, 279 n.1 (3d Cir. 2004).

22

*Pennsylvania*, 91 F.3d 542, 547 (3d Cir. 1996). A district court's exercise of its equitable jurisdiction in a motion for return of property under Rule 41(g) is reviewed for abuse of discretion, *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999), while our review of a district court's granting of a 12(b)(6) motion to dismiss is plenary. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006).

## IV.

Ms. Peloro raises two claims on appeal. First, she challenges the District Court's grant of summary judgment in favor of the Trustee and R.H. Second, she challenges the District Court's dismissal of her amended complaint as to the federal defendants. For the reasons stated below, we will affirm the District Court's rulings.

## A.

We begin with Ms. Peloro's challenge to the District Court's grant of summary judgment in favor of R.H. and the Trustee on the state-law unlawful conversion claim. Ms. Peloro's amended complaint alleges that

> [t]he unauthorized deposit of [her] securities into an account without notice to plaintiff and without authorization from the plaintiff which action resulted in plaintiff being unable to bring a timely SIPA claim for return of the Certificated Securities constituted an unlawful conversion of [her] property into property of the bankruptcy estate,

Am. Compl. ¶ 45, and that, "[a]s a result of the continued deprivation of plaintiff's property by defendants," she has suffered damages. Am. Compl. ¶ 46.

The District Court held that the findings of the Bankruptcy Court in the prior proceeding precluded a District Court finding in Ms. Peloro's favor, and hence granted the motion of the Trustee and R.H. for summary judgment. The District Court based its holding on both claim and issue preclusion. We find that issue preclusion suffices to bar Ms. Peloro's claim for unlawful conversion. We do not, therefore,

24

address questions of claim preclusion.

**(i)**

Summary judgment is required where the pleadings and evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). However, in considering such a motion, the court must neither resolve factual disputes nor make judgments of credibility; instead, all "[i]nferences should be drawn in the light most favorable to the non-moving party." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).

**(ii)**

Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citing *Mueller v. Tech. Devices Corp.*, 84 A.2d 620, 623 (N.J. 1951)). Therefore, "one of the essential elements of the tort of conversion [is] ownership of

25

goods or chattels." *Boccone v. Eichen Levinson, LLP*, No. 04-3871, 2006 U.S. Dist. LEXIS 94475, at \*20, 2007 WL 77328, at \*7 (D.N.J. Dec. 26, 2006).

The District Court found that if the certificated securities were "properly customer property under SIPA," Bankr. Ct. Op. 15, App. 392a, then, as a matter of law, they could not have been the property of Ms. Peloro at the time that the alleged conversion took place.[10] The court reasoned that:

> Here, Ms. Peloro asserts an unlawful conversion claim, which, under New Jersey law, is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. Proving that property has been converted therefore requires, *inter alia*, resolution of the issue which party has the right to possess the property.

D. Ct. Op. 13–14, App. 15a–16a. Based on this analysis, the

---

[10] R.H. and the Trustee did not come into possession of the certificated securities until "on or about July 24, 1997," D. Ct. Op. 6, App. 8a, well after qualifying assets held by FIEC had become customer property—which occurred either at the filing of the complaint by the SEC against FIEC on March 6, 1997 or at the commencement of liquidation proceedings on March 10, 1997.

District Court concluded that the prior adjudication by the Bankruptcy Court required a finding against Ms. Peloro on the issue of which party had the "right to possess the property":

> The issue before the Bankruptcy Court was whether the Bearer Bonds in issue constituted "customer property," and the Bankruptcy Court held that they were indeed "customer property," which means that the Bankruptcy Court determined that they were not the property of Ms. Peloro. . . . Because the Bankruptcy Court has already resolved this issue against Ms. Peloro, Ms. Peloro is precluded from rearguing that she has the right to possess the Bearer Bonds.

D. Ct. Op. 14, App. 16a.

We agree with the District Court's analysis. The essential question is whether the certificated securities were—by operation of law under SIPA—*already* "customer property" at the point at which the Trustee and/or R.H. allocated them to the joint account. If the securities were "properly customer property" at the time they were received by R.H. and the Trustee, then the securities were part of the FIEC bankruptcy estate's customer property fund and were *not* Ms. Peloro's personal property, with the result that the actions of R.H. and the Trustee could not qualify as conversion under New Jersey law.

27

Thus, if the District Court was correct in finding itself bound by the Bankruptcy Court's determination that the certificated securities were customer property, then the District Court was also correct in granting summary judgment in favor of the Trustee and R.H. We now consider whether the District Court was correct in finding that issue preclusion barred relitigation of the customer property issue.

**(iii)**

Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" *Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5

28

(1979).[11]  In its classic form, collateral estoppel also required

"mutuality"—i.e., that the parties on both sides of the current

proceeding be bound by the judgment in the prior proceeding.

*Parklane Hosiery*, 439 U.S. at 326–27.  Under the modern

doctrine of non-mutual issue preclusion, however, a litigant may

also be estopped from advancing a position that he or she has

presented and lost in a prior proceeding against a different

adversary.  *See Blonder-Tongue Labs., Inc. v. Univ. of Ill.*

*Found.,* 402 U.S. 313, 324 (1971); *Parklane Hosiery*, 439 U.S.

at 329.  For defensive collateral estoppel—a form of non-mutual

issue preclusion—to apply, the party to be precluded must have

had a "full and fair" opportunity to litigate the issue in the first

action.  *See Parklane Hosiery*, 439 U.S. at 328, 332; *Blonder-*

*Tongue Labs*, 402 U.S. at 331, 333.

---

[11] We "follow the federal rule that the law of the issuing court—here, federal law—determines the preclusive effects of a prior judgment." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 145 (3d Cir. 1999); *see also Burlington Northern Railroad*, 63 F.3d at 1231 ("[W]e apply federal common law principles of issue preclusion since we are examining the issue preclusive effect of a prior federal court action").

Ms. Peloro objected to the Trustee's denial of her claim, and the Bankruptcy Court decided against Ms. Peloro, finding "that the two securities at issue here, [the Ashland and Coleman securities,] were properly customer property under SIPA." Bankr. Ct. Op. 15, App. 392a. The District Court found that, as to the Trustee, Ms. Peloro was barred from relitigating the question of whether the bonds were "properly customer property," because she had litigated the same issue against the same party in the earlier bankruptcy proceeding. Applying the doctrine of non-mutual issue preclusion, the court further found that "[b]ecause no facts indicate that Ms. Peloro did not have a full and fair opportunity to litigate this issue in the prior bankruptcy proceeding, preclusion of claims against R.H. is appropriate in this case." D. Ct. Op. 14, App. 16a. We agree.

All of the "prerequisites for the application of issue preclusion" identified in *Burlington Northern Railroad* are present here. *Cf. Katchen v. Landy*, 382 U.S. 323, 334 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."); *cf. also Bd. of Trustees.*

30

*v. Centra*, 983 F.2d 495, 505–506 (3d Cir. 1992) (giving issue preclusive effect to bankruptcy court order in subsequent district court preceding). The issue "sought to be precluded" in the District Court was the same as that in the Bankruptcy Court proceeding—whether, at or before the time that the Trustee and R.H. allocated the securities to Ms. Peloro's joint account, they were already "customer property under SIPA."[12] Further, the issue was "actually litigated" by Ms. Peloro before the Bankruptcy Court, and she had a full and fair opportunity to

---

[12] Although only the Ashland and Coleman securities were at issue in the Bankruptcy Court proceedings, Ms. Peloro does not advance any argument for treating the Brevard security in a different manner. We find that the issue decided by the Bankruptcy Court—whether the certificated securities delivered by Ms. Peloro to FIEC and seized by the FBI were "properly customer property under SIPA"—is broad enough to preclude relitigation of the issue as to all of the certificated securities, including the Brevard security. *See* Restatement (Second) of Judgments § 27, cmt. c (1982) (providing that, in considering the "dimensions of an issue" for purposes of issue preclusion, a court should ask, *inter alia*, "Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?" and "How closely related are the claims involved in the two proceedings?").

31

present her claims. *See supra* Part II.A. Following a hearing, the Bankruptcy Court entered a "final and valid judgment" in the form of an order affirming the Trustee's determination of claim. *See In re A & P Diversified Techs. Realty*, 467 F.3d 337, 341 (3d Cir. 2006) (bankruptcy court orders allowing or denying claims are final and appealable).[13] Finally, we find that the customer property issue was essential to the Bankruptcy Court's judgment. Because the filing of a SIPA claim form would only be required in regard to customer property, the determination that the bonds were customer property was a necessary ingredient of the Bankruptcy Court's further holding that Ms. Peloro's claim form was untimely. *See* Bankr. Ct. Op. 13, App. 390a ("Ms. Peloro's threshold argument and a decisive point here is that the bonds in question are not customer property under SIPA."); *see also* Bankr. Ct. Op. 15, App. 392a ("[The securities at issue] were properly customer property under SIPA, and as such, a SIPA claims form was required to be submitted

---

[13] As noted above, *see supra* Part II.A, Ms. Peloro did not appeal the Bankruptcy Court's decision.

on or before November 19, 1997 in order . . . to assert a timely SIPA claim.").

In sum, the District Court correctly found that Ms. Peloro is not entitled to another bite of the apple on the customer property issue and that the settled status of the certificated securities as customer property forecloses Ms. Peloro's claim for conversion against the Trustee.  In addition, because Ms. Peloro was bound by the Bankruptcy Court's decision after receiving a full and fair opportunity to litigate the status of the bonds, the principle of defensive non-mutual issue preclusion bars her from relitigating the issue against R.H. as well.  *See Blonder-Tongue Labs*, 402 U.S. at 349; *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1182 (3d Cir. 1972).

**B.**

We now turn to Ms. Peloro's claim that the District Court erred in dismissing her claim against the federal defendants seeking the return of the certificated securities pursuant to Federal Rule of Criminal Procedure 41(g).  The District Court granted the federal defendants' motion to dismiss Peloro's Rule

41(g) claim, finding that there were no provable circumstances under which relief could be granted, "[b]ecause the United States cannot return the Bearer Bonds or be sued for money damages under Rule 41(g)." D. Ct. Op. 16, App. 18a.

Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g).[14] However, while the district courts have jurisdiction to hear claims brought under Rule 41(g), *see supra* Part III, the remedies available under that rule are limited. Because it

_____

[14] The full text of Rule 41(g) is as follows:
(g) Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.
Fed. R. Crim. P. 41(g).

"provides for one specific remedy—the return of property," we have held that Rule 41(g) does not constitute consent by the United States to be sued for money damages. *Bein*, 214 F.3d at 413 ("Sovereign immunity protects the Government from suit except insofar as it has waived that immunity. A waiver must be expressed unequivocally in statutory text and will not be implied.").

Nevertheless, we have emphasized that "[t]he question of remedies should arise only after the district court has investigated the status of the seized property." *United States v. Albinson*, 356 F.3d 278, 283 (3d Cir. 2004), and that therefore "a motion for return of property is not rendered moot merely because the government no longer possesses the seized property." *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999). Rather, "[i]f . . . the government asserts that it no longer has the property sought, the District Court must determine, in fact, whether the government retains possession of the property; if it finds that the government no longer possesses the property, the District Court must determine what happened

35

to the property." *Albinson*, 356 F.3d at 281 (quoting *Chambers*, 192 F.3d at 378).[15]

Although Rule 41(g) provides that "[t]he court shall receive evidence on any issue of fact necessary to the decision of the motion," the two-part inquiry described in *Chambers* does not require that "a district court . . . necessarily conduct an evidentiary hearing on every Rule 41(g) motion." *Albinson*, 356 F.3d at 281. A hearing is required only if needed to determine a "disputed issue of fact necessary to the resolution of the motion." *Id.* at 282 (quoting *Chambers*, 192 F.3d at 378).

In *Albinson*, we remanded because—while it was undisputed in that case that the government no longer possessed the property in issue—the district court "did not address the

_____

[15] We have explained that even where the ultimate availability of court-ordered relief is highly unlikely, this two-part *Chambers* inquiry "offers certain beneficial effects" in that (a) it may result in a finding that the government does, in fact, possess the property in question; or (b) it may result in other benefits to movants, individually and as a class—such as uncovering violations by government officers, identifying third parties in possession of the property, and encouraging accurate inventory-keeping by the government. *See Albinson*, 356 F.3d at 283, 284.

36

remainder of the *Chambers* inquiry regarding 'what happened to the property.'" *Id.* (quoting *Chambers*, 192 F.3d at 378). We held that an evidentiary hearing—or at least the receipt of affidavits or other "verified documentary evidence"—was required in those circumstances and thus remanded the case to the district court for further factual determination. By contrast, in this case not only is it undisputed that the federal defendants no longer have possession of the certificated securities, but it is equally clear "what happened to the property." Ms. Peloro has repeatedly acknowledged in court filings that "[o]n or about July 24, 1997 the Certificated Securities were returned by the FBI to R.H. Research Inc. who was retained by the Trustee for the liquidation of the FIEC." Am. Compl. ¶ 26, App. 36a; Pl.'s Resp. to Def.'s Statement of Mat. Facts ¶ 21, App. 408a. The District Court adopted this language almost verbatim in its findings of fact. *See* D. Ct. Op. 6, App. 8a.

Because there was no dispute as to the fact that the certificated securities had been transferred by the federal defendants to R.H. and/or the Trustee more than six years before

37

Ms. Peloro filed suit under Rule 41(g), the District Court was within its discretion to determine these facts without a hearing, and the determination of these facts satisfied its responsibility under *Chambers*. Further, having made this determination, the District Court correctly concluded that—because the federal defendants could neither return the securities nor be sued for money damages under Rule 41(g)—no set of provable facts existed under which Ms. Peloro would be entitled to a remedy. The District Court therefore properly dismissed Ms. Peloro's Rule 41(g) claim against the federal defendants.

## V.

For the reasons stated, we will affirm the District Court's October 14, 2004 order granting the Trustee's and R.H.'s motions for summary judgment, granting the federal defendants' motion to dismiss, and dismissing all claims with prejudice.

_____