**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0556-17T1

CHERI LANE, As Administratrix Ad
Prosequendum for the heirs-at-law of
Albert Lane, III, deceased, and as
General Administratrix of the Estate
of Albert Lane, III, Individually, and
DERRICK LANE,

     Plaintiffs-Appellants,

v.

CITY OF CAMDEN, GEORGE
REESE, ZSAKHEIM JAMES, PAUL
PRICE, STEPHEN BAKER, MERARI
PIMENTEL, FERNANDO BADILLO
and PATRIC COOPER,

     Defendants-Respondents.

_____

Argued January 24, 2019 – Decided March 5, 2019

Before Judges Fuentes and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3958-15.

James A. Lewis, V, argued the cause for appellants (Pennington Law Group, attorneys; Eric S. Pennington and James A. Lewis, V, on the briefs).

Daniel E. Rybeck argued the cause for respondents (Weir & Partners, LLP, attorneys; Daniel E. Rybeck and Georgios Farmakis, on the brief).

PER CURIAM

Plaintiffs Cheri Lane (individually and as administratrix of the estate of Albert Lane III) and her son, Derrick Lane, appeal from an order granting summary judgment to defendants City of Camden and City of Camden police officers George Reese, Stephen Baker, Merari Pimental, Fernando Badillo and Patric Cooper, and sergeants Zsakheim James and Paul Price, and an order denying plaintiffs' motion for reconsideration. Because we are convinced the court correctly determined plaintiffs are collaterally estopped from relitigating issues essential to their asserted causes of action, we affirm.

I.

In our review of the record before the trial court, we view the facts and all reasonable inferences therefrom in the light most favorable to plaintiffs, the parties against whom summary judgment was entered. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Applying that standard, the record before the trial court established the following facts.

A. The January 4, 2011 Incident.

On January 4, 2011, Cheri[1] was at her Camden home with her adult son, Albert, who was diagnosed with schizophrenia. She took Albert to the hospital because she was concerned about his behavior, but hospital employees told her there was nothing the hospital could do.

After returning home, Albert took a large knife from the kitchen and went to his upstairs bedroom. Cheri's other son Derrick arrived home, and he and Cheri attempted to get Albert to return the knife to the kitchen but Albert was not responsive. Cheri called 9-1-1, reporting that Albert was schizophrenic, not taking his medication and had a large knife that he would not put down.

Camden police officers, defendants Badillo, Pimentel, Cooper, Baker and Reese, and sergeants, defendants James and Price, arrived at the home. Cheri repeated what she reported to the 9-1-1 operator and explained that Albert studied martial arts and had injured a police officer during a prior incident. James went upstairs and attempted to negotiate with Albert to put the knife down, but Albert was unresponsive. James returned downstairs and directed Cheri and Derrick to leave the residence.

---

[1] Because Cheri Lane, Albert Lane III and Derrick Lane share the same surname, we refer to them by using their first names for ease of reference. We intend no disrespect in doing so.

A-0556-17T1

Reese obtained a ballistics shield and automatic weapon from his police car. Armed with a gun and protected by the shield, Price led James and Reese up the stairs into the narrow hallway toward the bedroom where Albert was located. Albert sat on the bed and first remained unresponsive to James's commands. Albert then got up from the bed and held the knife. He did not respond to Reese's orders to put the knife down.

Armed with the knife, Albert walked toward the bedroom doorway where the police officers stood. James instructed Albert to "[s]top it" and drop the knife, but Albert continued to move toward the door. According to the officers, Albert lunged at them with the knife. Reese and Price fired their weapons a total of twelve times. Albert fell to the floor and was handcuffed. James called for emergency services. Albert was transported to the hospital where he later died.

Upon hearing the gunshots, Cheri and Derrick attempted to re-enter their home. They knocked on the front door, attempted to break down the door and Derrick attempted to break through a window. The officers ordered Cheri and Derrick to remain outside and informed them they were not allowed to re-enter the home, but Derrick broke the front door lock and gained entry. He was subdued by the officers, placed in handcuffs and taken to the police station, but not charged with any offense.

A-0556-17T1

Cheri also entered the home, where she fought with the officers and attempted to trip them. She was also handcuffed and transported to the police station, but not charged with any offense.

It was later determined Albert was struck with ten gunshots, including shots to his back and head. The injuries resulting from the gunshots caused his death.

## B. Plaintiffs Litigate Their Claims In The United States District Court.

Plaintiffs filed a seventeen count complaint in the United States District Court for the District of New Jersey alleging causes of action arising out of the shooting death of Albert and the actions taken against Cheri and Derrick.[2] The complaint alleged defendants violated plaintiffs' civil rights by subjecting them to false arrest, false imprisonment and the use of excessive and deadly force and by conspiring to violate their civil rights. Plaintiffs further alleged defendants were negligently trained, retained and supervised and that the individual defendants failed to intervene to prevent other defendants' violations of

---

[2] The complaint filed in the district court is not included in the record on appeal. Our references to and description of the complaint are based on information gleaned from the parties' briefs and the district court's order and opinion dismissing the complaint. The complaint asserted ten claims founded on alleged violations of federal law and seven claims based on alleged violations of New Jersey law.

plaintiffs' civil rights. Plaintiffs asserted statutory claims under 42 U.S.C. §§ 1983 and 1985(3) and the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2.

Following the exchange of discovery, defendants moved for summary judgment. In a detailed and comprehensive written opinion, the district court found that the undisputed evidence established that Albert approached the doorway of his bedroom holding a knife and, after being told by James to "[s]top it," "just full out lunged with the knife" and was "coming at" James, Price and Reese as they stood at the bedroom doorway. It was at that time Price and Reese fired their weapons at Albert, hitting him ten times.

The district court also determined the undisputed evidence established that Cheri and Derrick attempted to re-enter the home and were ordered by the officers who remained downstairs that they could not re-enter. The evidence also established that Cheri and Derrick tried to break down the front door and Derrick snapped the lock as the officers attempted to hold the front door shut. Cheri admitted fighting with the police officers and attempting to trip them, and was handcuffed and placed in a police car. Derrick resisted the officers' efforts to keep him outside of the residence and was handcuffed and also placed in a police car.

6

The district court found the individual defendants were entitled to qualified immunity, shielding them from "liability for civil damages," see also Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)), because they used reasonable force in subduing Albert, Cheri and Derrick. The court found that the force employed by the officers to secure Cheri and Derrick in handcuffs and remove them from the premises was reasonable given the circumstances and Cheri's and Derrick's conduct.

The district court similarly found that the use of deadly force to subdue Albert was reasonable. The court explained that the evidence showed Albert was five-foot-nine-inches tall and weighed 260 pounds, was diagnosed with schizophrenia and possessed a knife with an eight-inch blade. The court further determined the undisputed evidence showed Albert "advanced upon" James, Price and Reese with the knife, lunged at them with the knife and that the officers "acted reasonably in using deadly force." The court also found Albert posed an immediate threat and Price and Reese fired their guns "almost simultaneously, and there is no evidence [they] continued firing after [Albert] was subdued." The court decided that given the danger to James, Price and Reese presented by Albert's actions, "it was not unreasonable for [Price and Reese] to discharge

their weapons instead of trying to retreat down the stairs." The district court noted that Albert's "death was a tragedy" but found that Price and Reese "resorted to deadly force only when they were assaulted with deadly force" and, therefore, all of the officers and sergeants present on the scene were therefore entitled to qualified immunity related to the alleged use of force resulting in Albert's death.

The district court further determined the same findings of fact required dismissal of plaintiffs' remaining claims that the individual defendants failed to intervene in the wrongful conduct of the others, and their negligent hiring, training, supervision and retention claims against Camden. The court concluded that each of those causes of action was also founded on an incorrect premise that the officers and sergeants violated plaintiffs' civil rights either by falsely arresting and imprisoning Cheri and Derrick or by using excessive force against Derrick and them. The court dismissed the claims because the undisputed evidence established there was probable cause for the arrests and brief imprisonments of Cheri and Derrick, and the use of force against each of the plaintiffs was reasonable.

The district court also dismissed plaintiffs' claim that defendants conspired to violate plaintiffs' civil rights, finding plaintiffs did not allege "any

8

class or race-based motive which would support a Section 1985(3) claim," and therefore granted summary judgment to defendants.

The district court did not decide defendants' request for summary judgment on plaintiffs' related state law claims, and dismissed those claims without prejudice. The district court entered an order granting defendants' summary judgment dismissing the ten federal claims asserted in the complaint and dismissing the remaining seven state court claims without prejudice. Plaintiffs did not appeal the district court's order to the Court of Appeals for the Third Circuit.

C. Plaintiffs' State Court Complaint.

Plaintiffs filed a complaint in the Law Division asserting sixteen state law claims arising out of the January 4, 2011 incident. Plaintiffs named the same defendants as those in the district court action. Plaintiff asserted the following claims: violation of the NJCRA (count one); failure to intervene (count two); assault and battery (count three); false imprisonment (count four); intentional infliction of emotional distress (count five); negligent infliction of emotional distress (count six); negligent hiring (count seven); negligent training (count eight); negligent supervision (count nine); negligent retention (count ten); false arrest (count eleven); municipal and governmental liability (count twelve); civil

conspiracy to commit torts (count thirteen); wrongful death (count fourteen); Albert's personal injury under the Survival Statute, N.J.S.A. 2A:15-3 (count fifteen); and injunctive relief (count sixteen).

Defendants moved for summary judgment, arguing plaintiffs were collaterally estopped from prosecuting each of the causes of action based on the findings of the district court. The Law Division judge agreed, finding all of plaintiffs' claims are based on either the alleged excessive use of force against Albert, Cheri and Derrick or the purported false arrests of Cheri and Derrick. The judge determined the district court found defendants' use of force was reasonable and there was probable cause for the arrests of Cheri and Derrick. The judge concluded that based on the district court's findings, plaintiffs were collaterally estopped from relitigating those essential factual predicates to all of their state law claims.

The judge entered an order granting defendants' summary judgment motion and dismissing the complaint. Plaintiffs moved for reconsideration. The court denied the motion and entered an appropriate order. This appeal followed.

Plaintiffs present the following arguments for our consideration:

POINT I

SUMMARY JUDGMENT MUST BE REVERSED[.]

POINT II

THE TRIAL COURT'S DECISION TO GRANT THE MOTION FOR SUMMARY JUDGMENT ON THE LIMITED BASIS OF COLLATERAL ESTOPPEL, ONLY, OVERLOOKS THE REQUIREMENTS FOR COLLATERAL ESTOPPEL REMAIN UNMET[.]

A. Plaintffs' Claims Are Not Subject to Collateral Estoppel.

(1) The Issues Presently Before the Court were Not Decided in the Prior Proceeding[.]

(2) Plaintiffs' State Law Claims Have Not Been Actually Litigated[.]

(3) Plaintiffs are Entitled to a Decision on the Merits in Connection with the Allegations Herein [.]

(4) The Prior Proceeding Did Not Resolve the State Law Claims and A Decision on the State Law Claims was Not "Essential"[.]

(5) The Defendant Officers are liable for acting under color of law to deprive Albert of life without substantive due process contrary to the New Jersey Constitution.

II.

Our review of an order granting a party summary judgment "is premised on the same standard that governs the motion judge's determination." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). We consider the evidence in the light most favorable to the non-moving party to determine

11

whether there exist genuine disputes of material fact. <u>Petro-Lubricant Testing Labs., Inc. v. Adelman</u>, 233 N.J. 236, 256 (2018); <u>see also</u> <u>Brill</u>, 142 N.J. at 540. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo. <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

"As a general principle, '[c]ollateral estoppel is that branch of . . . res judicata which bars relitigation of any issue which was actually determined in a prior action.'" <u>In re Liquidation of Integrity Ins. Co. v. Celotex Asbestos Tr.</u>, 214 N.J. 51, 66 (2013) (quoting <u>Div. of Youth & Family Servs. v. R.D.</u>, 207 N.J. 88, 114 (2011)). Application of collateral estoppel to bar a plaintiff's claims presents a "question of law 'to be determined by a judge in the second proceeding after weighing the appropriate factors bearing upon the issue.'" <u>Selective Ins. Co. v. McAllister</u>, 327 N.J. Super. 168, 173 (App. Div. 2000) (quoting <u>Colucci v. Thomas Nicol Asphalt Co.</u>, 194 N.J. Super. 510, 518 (App. Div. 1984)).

Where, as here, the initial litigation is "the subject of a prior federal court judgment, the binding effect of that judgment . . . is determined by the law of the jurisdiction that rendered it." <u>Integrity Ins. Co.</u>, 214 N.J. at 67; <u>see also</u> <u>Gannon v. Am. Home Prods.</u>, 211 N.J. 454, 469 (2012). Thus, to "evaluat[e]

the collateral estoppel effect that . . . must [be] accord[ed]" the district court's decision, "the appropriate source of authority is found in the controlling decisions of the United States Court of Appeals for the Third Circuit." Gannon, 211 N.J. at 471.

The Third Circuit has held that a party is collaterally estopped from relitigating an issue where:

> (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.
>
> [Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30, 290 F.3d 567, 573 n.10 (3d Cir. 2002) (quoting Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 505 (3d Cir. 1992)).]

A party establishes an issue is identical under the first prong of the standard by demonstrating "that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000) (quoting Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4425 at 253 (1981)); see also Peloro v. United States, 488 F.3d 163, 175-76 n.12 (3d Cir. 2007) (finding that similarity of issues may be shown by the

substantial overlap of the evidence and arguments and the similarity of the claims in the two proceedings).  The existence of an additional element in a federal cause of action as opposed to the analogous state law cause of action "does not alter" the fact that the issues are identical.  Hailey v. City of Camden, 650 F. Supp. 2d 349, 356 (D.N.J. 2009) (holding that proving a hostile work environment under 42 U.S.C. § 1983 is identical to the analogous cause of action under the NJCRA); see also Pub. Serv. Mut. Ins. Co. v. Cohen, 616 F.2d 704, 708 (3d Cir. 1980) ("The fact that an issue arises in a slightly different context does not necessarily mean that collateral estoppel is inapplicable.").  "To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be substantial."  Hailey, 650 F. Supp. 2d at 354 (citation omitted).

Under the second prong of the standard, the disposition of an issue is considered final for collateral estoppel purposes where "the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."  Henglein v. Colt Indus., 260 F.3d 201, 210 (3d Cir. 2001) (quoting Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir. 1961)).  Collateral estoppel "does not require the entry of a judgment, final in the sense of being appealable."  Ibid. (quoting In re

A-0556-17T1

Brown, 951 F.2d 564, 569 (3d Cir. 1991)). Thus, collateral estoppel may apply "whenever an action is 'sufficiently firm to be accorded conclusive effect.'" In re Brown, 951 F.2d at 569 (citation omitted) (holding that collateral estoppel applied to issues of liability disposed of by grant of summary judgment that was not "final for purposes of appeal").

In addition, under the standard's third prong, "there is generally a bar against applying collateral estoppel to those who were not parties in the prior litigation." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009). However, an exception to that bar exists "when the nonparty is in privity with someone who was a party to the prior suit." Ibid. (citing Richards v. Jefferson Cty., 517 U.S. 793, 798 (1996)).

Finally, "collateral estoppel bars reconsideration of only those issues that the parties had a full and fair opportunity to litigate." In re Braen, 900 F.2d 621, 628 (3d Cir. 1990). The lack of a full and fair opportunity to litigate may be shown where "as a result of the conduct of his [or her] adversary or other special circumstances," the party against whom collateral estoppel is asserted "did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." Ibid. (citation omitted).

A-0556-17T1

Applying the Third Circuit's standard for collateral estoppel to the causes of action asserted in plaintiffs' Law Division complaint, we discern no basis to reverse the court's order granting defendants summary judgment. Plaintiffs argue they are not collaterally estopped from prosecuting their state court claims because the district court did not decide the state court claims and instead dismissed them without prejudice. Their contention ignores that application of collateral estoppel is not limited to prior decisions dismissing identical causes of action. "Collateral estoppel prevents the re-litigation of a factual or legal issue that was litigated in an earlier proceeding." Doe v. Hesketh, 828 F.3d 159, 171 3d Cir. (2016); see, e.g., Jones v. UPS, 214 F.3d 402, 406 (3d. Cir. 2000) (barring re-litigation of whether the plaintiff was "fully recovered" under the Americans with Disabilities Act, 42 U.S.C §§ 12101-12213, where a state court workers' compensation judge determined the plaintiff was "fully recovered" pursuant to Pennsylvania Workers' Compensation Act.).

Here, each of plaintiffs' causes of action is founded on factual and legal assertions that are identical to those presented to, and finally decided by, the district court. More particularly, plaintiffs' causes of action are dependent on the factual assertion that the individual defendants either used excessive or unreasonable force against Albert, Cheri and Derrick, or lacked probable cause

16

to arrest Cheri and Derrick. Stated differently, to succeed on the claims asserted in the complaint, plaintiffs are required to establish either that the individuals used unreasonable force against Albert, Cheri and Derrick or that the individual defendants did not have probable cause to arrest Cheri and Derrick.[3] Plaintiffs do not argue to the contrary.

Plaintiffs ignore, however, that the district court has already decided those identical issues and, as a result, plaintiffs are collaterally estopped from relitigating those issues in the Law Division. The district court determined the individual defendants did not use unreasonable or excessive force against Albert, Cheri or Derrick, and that there was probable cause for the arrests and brief imprisonments of Cheri and Derrick. Thus, although the district court did

---

[3] Plaintiffs' claimed violations of their constitutional rights under the NJCRA (count one) are based on the assertion that the individual defendants used excessive force against Albert and lacked probable cause to arrest Cheri and Derrick. Similarly, plaintiffs rely on the identical factual allegations to support their tort claims: failure to intervene (count two), assault and battery (count three), false imprisonment (count four), intentional infliction of emotional distress (count five), negligent infliction of emotional distress (count six), false arrest (count eleven), conspiracy to commit torts (count thirteen), wrongful death (count fourteen), and decedent's personal injury under the Survival Statute (count fifteen). Plaintiffs' remaining claims against Camden are also founded solely on the individual defendants' alleged use of excessive force and lack of probable cause to arrest Cheri and Derrick: negligent hiring (count seven), negligent training (count eight), negligent supervision (count nine), negligent retention (count ten) and injunctive relief (count sixteen).

A-0556-17T1

not directly decide the state law claims asserted in the federal complaint, it made final findings of fact and law that are fatal to each of plaintiffs' state law causes of action. That is because without a factual and legal determination that the individual defendants either used excessive force or lacked probable cause to arrest Cheri or Derrick, plaintiffs are unable to sustain their burden of proving their asserted causes of action.

We are therefore convinced the Law Division correctly determined plaintiffs are collaterally estopped from re-litigating issues that were finally decided by the district court. Moreover, our careful review of each of the causes of action in the Law Division complaint makes plain that the district court's final disposition of the issues related to the alleged excessive force and lack of probable cause require dismissal of plaintiffs' causes of action as a matter of law. We therefore affirm the court's order granting defendants' summary judgment motion.

Plaintiffs' remaining arguments concerning the court's application of collateral estoppel and the court's grant of summary judgment are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only that because we are convinced the court properly granted

18

defendants' summary judgment motion, it is unnecessary to address the court's order denying plaintiffs' motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19