**Richard J. MAYBERRY, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**James F. MARONEY, Superintendent, State Correctional Institution, Doerr Street and Ohio River, Pittsburgh, Pennsylvania, Defendant.**

Civ. A. No. 68–959.

United States District Court, W. D. Pennsylvania.

Aug. 24, 1976.

Michael L. Rosenfield, Pittsburgh, Pa., for plaintiffs.

John M. Duff, Deputy Atty. Gen., Dept. of Justice, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

This troublesome civil rights litigation is once again before the Court on the Commonwealth of Pennsylvania's application for relief from a consent judgment entered into by the parties and approved by this Court some three and one-half years ago.

The consent judgment presently at issue was the presumed culmination of. proceedings which began in July 1966, when plaintiff Richard J. Mayberry, then an inmate at the State Correctional Institution at Pittsburgh (Western Penitentiary), filed an action under 42 U.S.C. § 1983 against the superintendent of that institution.[1] By his action, based on alleged incidents stemming from an abortive prison breach in 1965,

---

1. Named defendant James F. Maroney was succeeded as superintendent of Western Penitentiary prior to entry of the consent judgment here in question.

Mayberry sought, *inter alia,* to enjoin the confinement of inmates in the basement area of the Behavior Adjustment Unit (BAU) at Western Penitentiary. The suit subsequently was certified as a class action, encompassing all persons who were or might in the future be subject to such confinement.

On January 18, 1973, the Court approved the consent judgment which is the focus of the instant proceeding. In accordance with its terms, Mayberry withdrew his claim for damages and the Commonwealth discontinued the use of the subterranean portion of the BAU.

The events which surrounded and followed entry of the consent judgment are familiar to all concerned and need not be chronicled here except insofar as they are pertinent to the matter now before me. For present purposes, it is sufficient to state that on October 17, 1974, the Commonwealth petitioned the Court for partial relief from the 1973 consent decree, alleging that:

> "[e]xperience has indicated conclusively that no effective substitute for such segregated confinement is available under present circumstances at Western [Penitentiary], and that as much for the sake of the other residents of the BAU as for

the preservation of discipline and order, the use of the area in question on an emergency or crisis basis is an absolute necessity." [2]

The Commonwealth's motion for relief was opposed by plaintiff. Briefs on the issue were requested and subsequently filed, and on January 15, 1975, after careful consideration of the parties' contentions, I granted the Commonwealth's motion, amended the consent judgment and permitted the affected portion of the BAU to be reopened under certain restricted conditions.[3] Plaintiff appealed.

On January 19, 1976, the United States Court of Appeals for the Third Circuit vacated my order and remanded the case for an evidentiary hearing on the Commonwealth's original motion for relief from the 1973 consent judgment.[4] That evidentiary hearing—a proceeding which included a thorough view by the Court of the premises in question—has now been completed. In my judgment, it has established adequate support for the "unsupported allegations" contained in the Commonwealth's original motion for relief. Accordingly, the motion will be granted, the consent judgment will be vacated in its entirety and the parties will be restored to the legal positions they occupied prior to January 18, 1973.[5]

---

**2.** The Commonwealth's motion for relief also noted a point which is central to an understanding of the factual situation: On January 19, 1972, one year prior to entry of the consent judgment, the basement area of the BAU had been closed by order of the Governor of Pennsylvania. Apparently, the Commonwealth's agreement to the terms of the judgment was prompted by a then-valid belief that the 1973 consent decree merely embodied a commitment already in existence. The basis of that belief disintegrated on December 11, 1973, when, after nearly two years without the use of the BAU basement area, the Governor rescinded his 1972 order. At that time, the basement facility was reopened despite the existence of the consent judgment which had been entered in the interim. The questions raised by the Commonwealth's apparent disregard for the terms of that judgment will be considered by the Court at a forthcoming contempt proceeding.

**3.** By virtue of the administrative decision, these modified conditions of confinement were in ef-

fect at the time of the Court's January 1975 Order. The Court understands that they will continue to pertain if the area in question is again permitted to reopen at this juncture. Included among these conditions is a limitation to use for emergency confinement not to exceed 48 hours in each instance.

**4.** *Mayberry v. Maroney,* 3 Cir., 529 F.2d 332. The vice perceived by the Court of Appeals was that "[t]he district court erred . . . in proceeding, without an evidentiary hearing, to grant the Commonwealth's motion solely on the unsupported allegations therein." *Id.* at 336.

**5.** It should be noted at this point that the motion now before the Court does not request modification of the 1973 consent judgment, but rather seeks vacation of that judgment in its totality. This change in the nature of the Commonwealth's motion was initiated (without opposition by plaintiff) in response to the Court's suggestion that mere modification of the judg-

## I

Should there be any doubt, we begin by stating plainly that the Court is mindful of the fact that disposition of the Commonwealth's motion for relief is controlled by Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure. However, inasmuch as the instant adjudication effectively operates to maintain or remove the current injunction against use of the basement area of the BAU, I believe it both relevant and appropriate, albeit technically digressive, to observe that any *de novo* consideration of the propriety *vel non* of a federal court injunction in this matter would in all probability result in a determination that, in these circumstances, such relief is not warranted under § 1983.

That hypothetical result would seem to follow from an application of the Supreme Court's recent decision in *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), a § 1983 case that I am inclined to read as a firm instruction to the federal judiciary that intrusion by injunctive decree into the internal affairs of a state agency is impermissible in the absence of a clear violation of constitutional rights or breach of constitutional duties on the part of state officers.

■ In the context of the instant case, the lesson gleaned by this Court from *Rizzo v. Goode* might be stated as follows: Absent a violation of the Eighth Amendment's prohibition of cruel and unusual punishments, the rationally-based, nondiscriminatory election of state prison authorities to confine an inmate in one place as opposed to another is not properly subject to federal judicial review. Such a decision is managerial in nature, part and parcel of the day-to-day administration of prison affairs, and, as such, should not be interfered with by the district court. In a legal/political sense,

federal intervention in such circumstances contravenes important considerations of comity and federalism; pragmatically, it ignores the manifest lack of judicial expertise in the conduct and management of correctional institutions. See *Finney v. Arkansas Board of Correction,* 505 F.2d 194, 200 (8th Cir. 1974).

■ We need not belabor matters relating to the obvious and crucial qualification on the message perceived in *Rizzo v. Goode.* Suffice it to say that it is now apparent to the Court that, at least under present institutional procedures, the temporary confinement of Western Penitentiary inmates in the basement portion of the BAU in and of itself entails no violation of constitutionally-guaranteed rights. In this regard, it is clear from the Court's own view of the premises that such familiar terms as "dungeon" and "hole" are misleading exaggerations as applied to the BAU basement detention facility.[6] Though certainly not a particularly pleasant place of confinement (a description equally applicable to the vast majority of penal facilities in the United States), the area is bright, dry and clean, the individual cells small but reasonably adequate for use on the temporary (48-hour maximum) basis mandated by prison authorities and assumed by the Court herein. In sum, the basement area of the BAU is an austere but acceptably humane emergency detention facility. Standing alone, the temporary confinement of prisoners therein is plainly neither unconscionable nor susceptible to characterization as cruel and unusual punishment.

Nor would the envisioned institutional use of the BAU basement facility violate other rights secured by virtue of the Federal Constitution. In this regard, it has at no time been suggested, and the record is devoid of anything to indicate, that confine-

ment would necessarily vitiate plaintiff's consent to its original terms, and that such terms, if altered at all, must therefore be revoked entirely, restoring the case to the status quo ante. It is undisputed that identical legal principles govern motions to vacate judgment in

whole or in part. See Rule 60(b) of the Federal Rules of Civil Procedure.

**6.** The record does not indicate whether the physical condition of the area is the same as it was prior to January 1973.

ment in the area has occurred on an invidiously discriminatory basis. Moreover, the testimony of Deputy Superintendent Zimmerman at the hearing before this Court, coupled with the Court's view of the premises in question, impels the conclusion that use of the BAU basement facility is at least rationally related to the Commonwealth's legitimate need for a secure area of the prison in which unruly, defiant and/or dangerous inmates can be temporarily segregated from the rest of the prison population to act out their anger or frustrations with the least possible disturbance to the orderly management of the institution. No other or better facility is presently available for this purpose at Western Penitentiary. The only alternatives are new construction at that institution or transfer of such inmates to another correctional facility. In these circumstances, the Court would be strongly inclined to deny injunctive relief in a *de novo* proceeding.

## II

The question now before the Court, however, is not what result it would reach *de novo*, but rather whether it should vacate the consent judgment of January 18, 1973 and restore the parties to the status quo. As previously indicated, that question is controlled by Fed.R.Civ.P. 60(b)(5) and (6), which provides as follows:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) . . . it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment.*" (emphasis supplied)

■ While it need hardly be stated that the language high-lighted above is exceedingly broad, the Court recognizes that Rule 60(b)(6) "confers no standardless residual discretionary power to set aside judgments on mere second thought," *Mayberry v. Maroney, supra* at 337 (concurring opinion),

but " 'provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances.' " *Id.* at 335 (quoting *Torockio v. Chamberlain Mfg. Co.,* 56 F.R.D. 82 (W.D.Pa.1972), aff'd 474 F.2d 1340 (3d Cir. 1973)). Our Court of Appeals has explained the standard embodied by the Rule in the following terms:

> "To accomplish justice, a court may vacate a judgment for any adequate reason coming within the 'other reason' wording of clause (6) of the Rule. *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949). There must, however, be adequate evidence of changed circumstances or reasons before a judgment may be modified under either segment [(5) or (6)] of Rule 60(b)." *Mayberry v. Maroney, supra* at 335.

■ In my view, "adequate evidence of changed circumstances or reasons" has been forthcoming in this case. First, as a matter of changed conditions or circumstances in the most obvious sense, the testimony adduced at the evidentiary hearing plainly indicates that the Commonwealth's proposed use of the BAU basement area is now subject to specific limitations not in effect prior to January 1973—principally, the limitation to emergency confinement for a maximum of 48 hours. Second, the testimony of Deputy Superintendent Zimmerman and the Court's own view of the premises in question support the proposition that recourse to the basement facility on an emergency or crisis basis is essential to the orderly management of Western Penitentiary. Despite plaintiff's suggestion that the Commonwealth should have recognized this reality prior to its agreement to the terms of the 1973 consent decree, the hard fact of the matter is that it required some two years of institutional experience without recourse to the basement facility to impress upon prison authorities the necessity for its use.

Clearly, there is more here than a mere change of mind on the part of officials at Western Penitentiary. They have attempted to operate the institution without use of

a segregated confinement area and, after substantial experience, have discovered that the realities of prison life require that such an area be available on an emergency basis. They now seek to reopen the BAU facility under significantly modified conditions in exchange for restoration of plaintiff's undiminished right to proceed with his original lawsuit. Their request is neither unjust nor unreasonable and, in my view, Rule 60(b)(5) and (6) must be read so as to grant it. In the final analysis, any other result must spring from a willingness to interpose the Court's interest in the finality of judgments as a rigid barrier to judicial recognition of the demands of reality and the dictates of common sense.

The Commonwealth's motion to vacate the consent judgment of January 18, 1973 will be granted. An appropriate Order shall issue.