Richard J. MAYBERRY, Appellant,

v.

James F. MARONEY, Superintendent, State Correctional Institution, Pittsburgh, Pennsylvania.

No. 76–2296.

United States Court of Appeals, Third Circuit.

Argued May 2, 1977.

Decided July 7, 1977.

John M. Duff, Deputy Atty. Gen., Dept. of Justice, Commonwealth of Pennsylvania, Pittsburgh, Pa., Frederick R. Nene, Asst.

Atty. Gen., Pittsburgh, Pa., Robert P. Kane, Atty. Gen., Harrisburg Pa., for appellee.

Michael L. Rosenfield, Berlin, Boas, Issacson, Logan, Rosenfield & Sharon, Pittsburgh, Pa., for appellant.

Before GIBBONS and HUNTER, Circuit Judges, and LAYTON, Senior District Judge.[*]

LAYTON, Senior District Judge:

Once again we are asked to review the district court's grant of relief, pursuant to Rule 60(b)(5) and (6), F.R.C.P. from a consent judgment entered in favor of the plaintiff class on January 18, 1973. Additionally, the plaintiff class has appealed from the refusal of the district judge to disqualify himself.

The facts surrounding this rather lengthy litigation are familiar to all concerned, and will be summarized only to the extent necessary in order to dispose of the issues presently before this Court. On July 29, 1966, plaintiff Mayberry brought this action pursuant to 42 U.S.C. § 1983, complaining of physical abuse by prison officials and confinement in facilities creating hazards to his health. Suffice it to say that after much litigation, the plaintiff sought to have the action certified on behalf of the class of "all those who have been at any time subsequent to June 25, 1965, or who are at present, or who will hereafter be confined at the State Correction Institute at Pittsburgh (Western Penitentiary)."[1] The Commonwealth declined to oppose the class certification[2] and, on December 11, 1972, a certification order was entered.[3] On January 18, 1973 a consent judgment was entered, which, in pertinent part, enjoined the Commonwealth from confining any class member in a basement facility known as the Behavior Adjustment Unit (BAU). No immediate change was wrought by the injunction, because the BAU had already been ordered closed by the Governor of Pennsylvania one year earlier, a fact heavily relied upon by the Commonwealth in argument before this Court. The Governor's order was rescinded on December 11, 1973, and prison officials, once again, began to use the BAU for confinement of unruly prisoners, notwithstanding the fact that such activity was clearly in violation of the January 18, 1973 consent judgment. After more than 10 months of such violative use, the Commonwealth sought relief from the consent judgment pursuant to Rule 60(b), F.R.C.P. Relief was granted by the district court without a hearing, and on January 19, 1976, we remanded with directions to conduct a hearing, at which time evidence in support of the Commonwealth's motion could properly be gathered and made of record.[4] Upon remand the plaintiff moved to have the district judge disqualify himself, pursuant to 28 U.S.C. § 455. This motion was denied.[5] A hearing was held and, on August 24, 1976, the district court granted the Commonwealth's motion to vacate the consent judgment.[6] Both the issues of the district judge's refusal to disqualify himself, and his grant of relief are raised on this appeal.

Preliminary to our disposition of these two issues, however, a contention raised by the Commonwealth requires attention. In its brief, the Commonwealth noted, almost as an aside, that opposing counsel, Michael L. Rosenfield, Esq., of the National Emergency Civil Liberties Committee, "purports to represent a class no member of which has retained him and no member of which has appeared in this action other than Mayberry, who himself has professed no interest in

[*] Honorable Caleb R. Layton, III, Senior United States District Judge for the District of Delaware, sitting by designation.

1. *Mayberry v. Maroney*, C.A. 68–959, Doc. # 44 (W.D.Pa. December 11, 1972).

2. *Id.*, Doc. # 47.

3. *Id.*, Doc. # 44.

4. *Mayberry v. Maroney*, 529 F.2d 332 (3d Cir. 1976).

5. *Mayberry v. Maroney*, C.A. 68–959, Memo. Opinion Doc. # 63 (W.D.Pa. March 19, 1976).

6. *Mayberry v. Maroney*, 418 F.Supp. 669 (W.D. Pa.1976).

this case."[7] While it is unclear what conclusion the Commonwealth seeks to support with this alleged set of facts, we perceive an issue which arguably draws into question our jurisdiction to pass on the merits of this appeal. Thus the following discussion is necessary.

The relevant facts are as follows. After our remand to the district court, a hearing was held on April 6, 1976 at which time evidence in support of the Commonwealth's motion was introduced. On April 19, 1976 Mr. Rosenfield filed a motion to withdraw as counsel. This motion was prompted by letters from Mayberry to Rosenfield and the district court, in which the plaintiff expressed a general dissatisfaction with Rosenfield's representation and demanded that he be allowed to proceed *pro se*.[8] After a brief hearing, no transcript of which has apparently been made, the district judge granted Rosenfield's motion to withdraw "insofar as it relate[d] to the legal representation of named plaintiff Mayberry. Insofar as it relate[d] to the legal representation of the plaintiff class . . . the petition [was] denied."[9] Rosenfield was ordered to "continue to represent the class until such time as other suitable counsel enter[ed] on behalf of said class in this case."[10] Rosenfield continued to represent the class through the time of the district court's final disposition, and has taken this appeal on behalf of the class.

■ We deal here only with the issue, raised by these facts, whether there no longer exists a live "case or controversy" within the meaning of Article III of the United States Constitution, where, in a class action, an appeal is taken by an attorney who was ordered by the district court to represent the interests of that class after its representative had dissolved his retainer of that attorney and taken no further action.[11]

While plaintiff Mayberry, in his April 9, 1976 letter to the court, indicated a desire to continue *pro se*, the record is silent regarding any subsequent action taken by him in opposition to the Commonwealth's motion. If, as the Commonwealth has alleged, the class representative in this suit "has professed no interest" in these proceedings, and thus is not advancing any live interests before this Court, we must determine whether there remain parties at bar who have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues . . . ." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Even assuming that we may no longer look to Mayberry to advance the necessary live interests at this stage in the proceedings, the record fails to raise any doubt that, at the time the complaint was filed and at the time the class was certified, Mayberry provided this jurisdictional prerequisite. That being so, while the same "case or controversy" requirement obtains at all stages of the litigation, including the present proceedings, we may now look to the interests of the class, rather than those of its representative, to provide such a live controversy. *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Given that the class includes "all those who have been at any time subsequent to June 25, 1965, or who are at present, or who will hereafter be confined at the [Western Penitentiary]", clearly there are presently class members subject

---

7. Brief for Appellee at 14.

8. *Mayberry v. Maroney*, C.A. 68–959, Doc. #'s 68 and 69 (W.D.Pa., Apr. 1976).

9. *Id.*, Doc. # 71.

10. *Id.*

11. These same facts may give rise to a separate question relating to the requirement that a class action may proceed only if "the representative parties will fairly and adequately pro-

tect the interests of the class." Rule 23(a)(4), F.R.C.P.

Such a question is one of procedure and, other than the considerations discussed in the text, does not impact upon our own jurisdiction. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 912–913 (9th Cir. 1964). That being so, and because no Rule 23 issue was raised by the parties, or treated by the court below, we decline to reach any such issue here.

to confinement in the BAU. Thus live interests, sufficient to meet the "case or controversy" requirement, are properly before the Court.

## THE DISQUALIFICATION ISSUE

■ Shortly after our remand to the district court, directing that a hearing be held on the Commonwealth's motion for relief from the consent judgment, the plaintiffs moved to have the district judge disqualify himself. The motion was denied. The proper inquiry on appeal is whether the district judge abused his discretion in so doing. *Davis v. Board of School Comm'rs of Mobile Cty.*, 517 F.2d 1044, 1052 (5th Cir.), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

The plaintiffs assert that, because the district judge granted the Commonwealth's first motion without a hearing, and thus was allegedly predisposed towards granting rather extraordinary relief even in the absence of a properly developed record, his "impartiality might reasonably be questioned" within the meaning of 28 U.S.C. § 455(a).[12]

While the district court applied § 455 *as amended*,[13] thus employing a more expansive standard for recusal, we need not pause to consider whether he did so properly in the face of Congress' provision that the more expansive standard promulgated by the 1974 amendment shall not apply to any proceeding commenced prior to 1974.[14] *See In Re Virginia Elec. & Power Co.*, 539 F.2d

357 (4th Cir. 1976). *Contra, Samuel v. University of Pittsburgh*, 395 F.Supp. 1275 (W.D.Pa.), *rev'd on other grounds*, 538 F.2d 991 (3d Cir. 1976). Instead we feel that, under either standard, the plaintiffs' motion was properly denied.

■ Plaintiffs maintain that they are not urging upon this Court a general rule requiring the disqualification of each district judge to whom a case is remanded because of an error committed by that judge. Instead, they contend that the particular error for which we remanded, i. e., the failure to properly develop a record upon which an enlightened disposition could be made of the Commonwealth's request for relief from a final judgment,[15] somehow ineluctably summons reasonable questions concerning the impartiality of the judge committing that error. We disagree.

Noting that, other than the error itself, no facts are alleged in support of the plaintiffs' requested disqualification,[16] we can perceive no distinction between the alleged inference of partiality raised by the error committed in this case and that raised by any one of a host of other conceivable procedural errors. We doubt, therefore, that in providing for disqualification upon a judge's questioned impartiality, Congress considered such an inference to be "reasonable" within the meaning of § 455.

In expressing its concern that the new standard promulgated by § 455 might become a vehicle for "judge shopping", *see*

---

**12.** Plaintiffs expressly disavow any reliance upon 28 U.S.C. § 144, and thus are not claiming that any "personal bias or prejudice either against the [plaintiffs] or in favor of any adverse party . . . " exists. Brief for Appellant, p. 1.

**13.** Pub.L. 93–512 § 1 (December 5, 1974).

**14.** *Id.*, § 3.

**15.** The Commonwealth responds, in its brief, by arguing that Mr. Henry Swanger, then counsel for the plaintiff class, expressly agreed to have the district court decide the question without a hearing. Unfortunately, although such an agreement was obliquely referred to at a subsequent conference, *see* Transcript, February 20, 1975, p. 3, the proceeding at which

this alleged agreement was made was not recorded.

**16.** The 5th Circuit has held that the determination whether a judge's impartiality might reasonably be questioned should "be made on the basis of conduct extra-judicial in nature as distinguished from conduct within a judicial context." *Davis v. Board of School Comm'rs of Mobile Cty.*, 517 F.2d 1044, 1052 (5th Cir.) *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). Insofar as the policy behind § 455 is concerned with matters of potential influence which exist "outside the courtroom", we agree that the primary inquiry ought to be into extra-judicial conduct. There are no such circumstances of record in this case.

1974 U.S.Code Cong. and Adm. News p. 6355, we think it clear that Congress was cautioning against the adoption of the argument made by plaintiffs, and hold, therefore, that the district judge did not abuse his discretion in refusing to disqualify himself.

### RELIEF FROM FINAL JUDGMENT

We now turn to the central question presented by this appeal—whether, in vacating the January 18, 1973 consent judgment, the district court properly exercised its discretion. Because the record is barren of facts indicating any entitlement to 60(b) relief, we hold the grant of such relief to be an abuse of discretion and, therefore, reverse.

Rule 60(b), F.R.C.P., provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . (5) . . . it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from operation of the judgment." While the language of either provision is broad, neither presents the court with a "standardless residual discretionary power to set aside judgments . . . ." *Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir. 1976) (Gibbons, J., concurring). Instead it is settled that such relief is extraordinary and may be granted only upon a showing of "exceptional circumstances". *Id.* at 335; *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975); *John E. Smith's Sons Co. v. Lattimer Foundry & Mach. Co.*, 239 F.2d 815 (3d Cir. 1956); *Torockio v. Chamberlain Mfg. Co.*, 56 F.R.D. 82 (W.D.Pa.), aff'd, 474 F.2d 1340 (3d Cir. 1973). Thus a party seeking such relief must bear a heavy burden of showing circumstances so changed that "dangers, once substantial, have become attenuated to a shadow," *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932), and that, absent such relief an

"extreme" and "unexpected" hardship will result. *Id.* We think a healthy respect for the finality of judgments demands no less.

■ In granting the Commonwealth's motion below, the court relied upon evidence adduced at a hearing, at which the only witness was a prison official whose employment at the Western Penitentiary began after the consent judgment was entered, and a personal view of the BAU facility. It concluded that the "adequate evidence of changed circumstances" which we required upon remand, *Mayberry, supra*, 529 F.2d at 335, was as follows. First "the Commonwealth's proposed use of the BAU basement area is now subject to specific limitations not in effect prior to January 1973—principally, the limitation to emergency confinement for a maximum of 48 hours. Second, the testimony of Deputy Superintendent Zimmerman and the Court's own view of the premises in question support the proposition that recourse to the basement facility on an emergency or crisis basis is essential to the orderly management of Western Penitentiary." *Mayberry v. Maroney*, 418 F.Supp. 669, 673 (W.D.Pa. 1976).

The first "changed circumstance," if that be an appropriate label, is simply not that which is contemplated by the rule. The parties have agreed to, and the court has sanctioned, the closing of an allegedly offensive facility. The Commonwealth may not now artificially create its own "changed circumstance," and thus relieve itself from a free, calculated and deliberate choice, by offering a substitute remedy which provides a lesser safeguard against the injuries complained of on behalf of the class. Obviously this alternative remedy would be more convenient for the Commonwealth.[17] And it may be that, as the district court concluded, this suggested substitute remedy "is neither unjust nor unreasonable." *Id.* at 674. But, in the words of Mr. Justice Cardozo, "[w]e are not framing a decree. We are asking ourselves whether anything has

---

17. Zimmerman testified that the present practice, in dealing with an unruly prisoner, is to transfer him to another penal facility, and that

such transfers are a fairly common occurrence. Transcript, April 6, 1976, pp. 10, 17, 21.

happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making." *Swift & Co., supra,* 286 U.S. at 119, 52 S.Ct. at 464. Rather than this manufactured "changed circumstance," we would think it relevant to show that the physical conditions existing in the BAU had been improved, for that surely must have been one of the sources of the complaint on behalf of the class. Yet, while the district court concluded on the basis of its personal view, that "[t]hough certainly not a particularly pleasant place of confinement . . ., that area is bright, dry and clean, the individual cells small but reasonably adequate for use on the temporary (48-hour minimum) basis . . . ," *Mayberry, supra,* 418 F.Supp. at 672, it also found that "[t]he record does not indicate whether the physical condition of the area is the same as it was prior to January 1973." *Id.* at 672 n.6.

The second "changed circumstance" found by the court below is similarly insufficient to warrant this extraordinary relief. While the Commonwealth's witness testified that "recourse to the basement facility on an emergency or crisis basis is essential to the orderly management of Western Penitentiary," *id.* at 673, the district court failed to determine that this need was any greater than that which existed in January 1973, and which was consciously subordinated by the Commonwealth in its desire to settle the action. The Commonwealth "cannot be relieved of such a choice because hindsight seems to indicate to [it] that [its] decision . . . was probably wrong. . . . There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States,* 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207 (1950).

The fact that, at the time the consent judgment was entered, the BAU had already been closed pursuant to an order by the Governor of Pennsylvania, and thus that the decree "merely embodied a commitment already in existence," *Mayberry, supra,* 418 F.Supp. at 671 n.2, does not alter our view of this case. Surely a party's conscious decision to suffer a judgment against it is not such a meaningless act that relief is available simply because a parallel commitment has been terminated by executive fiat.

■ We might end our discussion at this point, but for the district court's lengthy analysis of the impact of *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) upon this case. After describing *Rizzo* as precluding federal judicial review of the "managerial" decisions of state prison officials, "[a]bsent a violation of the Eighth Amendment's prohibition of cruel and unusual punishments," *Mayberry, supra,* 418 F.Supp. at 672, the district court indicated a strong inclination to deny injunctive relief were it faced with a *de novo* proceeding. The issue in this case does not involve the propriety of federal intervention into the "day-to-day administration of prison affairs . . . ," *id.,* a fact that the district court somewhat grudgingly recognized. That issue has already been resolved by the parties at bar. Even assuming that *Rizzo* represents a change in the state of the law from the time the consent judgment was entered, it is settled that Rule 60(b)(5) does not contemplate relief based merely upon precedential evolution. *Lubben v. Selective Service System Local Bd. No. 27,* 453 F.2d 645, 650 (1st Cir. 1972); *Wallace Clark & Co., Inc. v. Acheson Industries, Inc.,* 394 F.Supp. 393, 395 n.4 (S.D.N.Y.), *aff'd,* 532 F.2d 846 (2d Cir.), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). Thus the only issue before this Court is whether the Commonwealth offered sufficient evidence of circumstances so exceptional that our overriding interest in the finality and repose of judgments may properly be overcome. No such evidence having been adduced, the district court's vacation of the January 1973 consent judgment was without the limits of its discretion. Accordingly, we reverse and remand to the district court with directions to vacate its order of August 24, 1976.