Michael L. **KEYES** and Jonathan K. **Yox**, Plaintiffs,

v.

Loretta E. **LYNCH**, Attorney General of the United States, et al., Defendants.

1:15–cv–457

United States District Court, M.D. Pennsylvania.

Signed 10/04/2016

Joshua G. Prince, Prince Law Offices PC, Bectelsville, PA, for Plaintiffs.

Daniel M. Riess, U.S. Dept. of Justice, Washington, DC, for Defendants.

## MEMORANDUM & ORDER

John E. Jones III, United States District Judge

Presently pending before the Court is Plaintiffs' motion to alter/amend judgment ("the Motion") as to our November 9, 2015 Order granting Defendants' motion to dismiss. (Doc. 21). The Motion has been fully briefed (Docs. 53, 54, 57) and is therefore ripe for our review. For the reasons that follow, the Motion shall be granted.

## I. FACTUAL BACKGROUND [1]

The Motion asks the Court to amend or alter our Order of November 9, 2015, where we granted Defendants' motion to dismiss and found that Plaintiff Keyes was barred from raising his Second Amendment as-applied challenge by issue preclusion. In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from the Plaintiffs' Complaint and are viewed in the light most favorable to the Plaintiffs.

Plaintiff Michael Keyes is a Master Trooper with the Pennsylvania State Police ("PSP"). (Doc. 1, ¶ 7). Plaintiff Jonathan Yox is a State Correctional Officer at the State Correctional Institution at Graterford. (*Id.*, ¶ 8).

Both Keyes and Yox were each once involuntarily committed for mental health concerns. Keyes was involuntarily committed as an adult at Holy Spirit Hospital in Cumberland County, Pennsylvania, on August 25, 2006, as a result of "imbibing in alcoholic beverages and making suicidal statements" as he was struggling through an "emotionally devastating" divorce. (*Id.*, ¶¶ 7, 21). He was initially involuntarily committed pursuant to 50 Pa. Stat. Ann. § 7302, allegedly in the absence of any due process, and then later, pursuant to 50 Pa. Stat. Ann. § 7303. (*Id.*). He was released by September 8, 2006. (*Id.*). Keyes never threatened to use a firearm against himself or others. (*Id.*, ¶ 22).

Yox was involuntarily committed as a juvenile at York Hospital, in Lebanon County, Pennsylvania, on March 30, 2006. (*Id.*, ¶ 50). He had been emotionally devastated by his parents' divorce and had begun cutting himself under the influence of an older girl. They also had made a suicide pact together. (*Id.*, ¶¶ 48–50). He was also initially involuntarily committed pursuant to 50 Pa. Stat. Ann. § 7302, allegedly in the absence of due process, and then later, pursuant to 50 Pa. Stat. Ann. § 7303. (*Id.*, ¶ 50). Yox was released by April 6, 2006. (*Id.*). In 2008, when he was 17, Yox enlisted in the U.S. Army. He honorably served until 2012, when he received an honorable

---

**1.** As the factual background of this matter has not changed since our memorandum and Order of November 9, 2015, (Doc. 21), we re-state the facts from that memorandum as relevant here.

discharge. (*Id.*, ¶¶ 52–53). During his time in the military, Yox spent six and a half months in a combat zone in Afghanistan. (*Id.*, ¶ 54). During his military service, Yox was trained to use, and did use, various kinds of firearms, including fully automatic rifles, machine guns, explosives, and grenade launchers. (*Id.*, ¶ 55). Upon his return from Afghanistan, Yox was not recommended for further psychological evaluation after his deployment briefing. (*Id.*, ¶ 56).

As a result of their involuntary commitments, Plaintiffs lost their "private capacity firearm rights" by operation of 18 Pa. C.S.A. § 6105(c)(4) and 18 U.S.C. § 922(g)(4). (*Id.*, ¶ 23). The Pennsylvania statute prohibits a "person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment . . ." from possessing or using a firearm. 18 Pa.C.S.A. § 6105(c)(4). The federal statute, 18 U.S.C. § 922(g)(4), prohibits any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" from possessing firearms or ammunition.

Notwithstanding their inability to possess guns in their private capacities, both Plaintiffs carry and use firearms in their current jobs. In his official capacity as a Master Trooper, Keyes carries a handgun on a daily basis, and when on patrol, he carries a fully automatic rifle and a shotgun. (*Id.*, ¶ 32). Yox actively possesses and uses a firearm in his official capacity as a State Correctional Officer. (*Id.*, ¶ 68). They are permitted to possess firearms in their official capacities as law enforcement officers by operation of 18 U.S.C. § 925(a)(1), which provides an exception to the firearms disability created by § 922(g)(4) for individuals benefitting in their official capacities the federal or state government. (*Id.*, ¶ 74).

On December 3, 2008, Keyes filed for Restoration of his State Firearm Rights with the Perry County Court of Common Pleas, pursuant to 18 Pa.C.S.A. § 6105(f).[2] (*Id.*, ¶ 24). The state court judge issued an order relieving Keyes only of his state firearm disability, finding that "Petitioner has in fact met his burden of showing that he may possess a firearm without risk to himself or any other person under the applicable provisions of law." (*Id.*, ¶¶ 25–26). On May 9, 2012, Keyes filed a request for expungement of his involuntary commitment; this request was denied by the state court. (*Id.*, ¶ 26). Keyes appealed this decision to the Superior Court. The Superior Court held that the language "the court may grant such relief as it deems appropriate" found in 18 Pa.C.S.A. § 6105(f)(1) does not provide the trial court with the power to expunge mental health commitment records and then affirmed the trial court's decision. *In re Keyes*, 83 A.3d 1016, 1024 (Pa. Super. Ct. 2013), *appeal denied*, 627 Pa. 766, 101 A.3d 104 (2014). (*Id.*, ¶ 27).[3]

On or about September or October of 2012, Yox was denied the ability to purchase a firearm after a Pennsylvania Instant Background Check System search. (*Id.*, ¶ 57). He appealed this denial to the

---

**2.** Section 6105(f)(1) reads: "Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person."

**3.** We note that Plaintiffs likely inadvertently mischaracterized the Superior Court's holding in their Complaint where they allege that the court held that § 6105(f) "does" provide the trial court with the power to expunge mental health commitment records.

PSP, which then informed him that he was prohibited pursuant to 18 Pa.C.S.A. § 6105 and 18 U.S.C. § 922(g) from owning a firearm based on his involuntary commitment in 2006. (*Id.*, ¶ 58). After having been evaluated by a psychologist who determined within a reasonable degree of psychological certainty that Yox did not pose a threat to himself or others, Yox filed a Petition to Vacate and Expunge his involuntary commitment with the Lancaster County Court of Common Pleas. (*Id.*, ¶¶ 59–60). However, the court found it was bound by *In re Keyes* and therefore prohibited from granting the relief of expungement. The court did grant Yox state relief from any disability imposed pursuant to 18 Pa.C.S.A. § 6105, based on a finding that Yox no longer suffers from the mental health condition that was the basis for his commitment and is able to safely possess a firearm with risk to himself or others. (*Id.*, ¶¶ 62–63).

Upon receipt and review of this state court order, the Bureau of Alcohol, Tobacco, and Firearms and Explosives', ("ATF"), Philadelphia Division Counsel Kevin White confirmed that it was ATF's position and policy that Yox remains prohibited under federal law from purchasing, possessing, or utilizing firearms in his private capacity, but that he could continue to possess and utilize firearms in his official capacity as a State Correctional Officer. (*Id.*, ¶ 64).

Both Keyes and Yox presently intend to purchase and possess firearms in their private capacities for self-defense within their respective homes. (*Id.*, ¶¶ 44, 69). However, they are prevented from doing so only by Defendants' active enforcement of the laws and policies complained of in the matter *sub judice*. Keyes and Yox are unwilling to purchase, possess, or utilize a firearm in their private capacities because

they fear arrest, prosecution, fine, and/or incarceration for violating 18 U.S.C. § 922(g)(4). (*Id.*, ¶¶ 46, 70).

## II. PROCEDURAL BACKGROUND

On March 5, 2015, Plaintiffs Michael L. Keyes, ("Mr. Keyes"), and Jonathan K. Yox, ("Mr. Yox"), filed a Complaint, alleging violations of their asserted Second Amendment right to keep and bear arms and Fifth Amendment equal protection and due process rights. (Doc. 1). Count I of the Complaint contends that, as applied to Plaintiffs, 18 U.S.C. § 922(g)(4) violates the Second Amendment. Count II alleges that, as applied to Mr. Yox, § 922(g)(4) violates the Second Amendment because Mr. Yox was under the age of 18 when he was involuntarily committed. Count III alleges that § 922(g)(4) violates the Due Process Clause of the Fifth Amendment as applied to Plaintiffs. Lastly, Count IV alleges that § 922(g)(4) violates Plaintiffs' equal protection rights secured under the Fifth Amendment. Plaintiffs seek various forms of declaratory and injunctive relief.

Defendants filed a partial motion to dismiss on May 11, 2015. (Doc. 10). On November 9, 2015, the Court granted Defendants' motion. (Doc. 21). Counts I and IV were dismissed with prejudice with respect to Plaintiff Michael Keyes on the basis of issue preclusion, because we held that Mr. Keyes had previously litigated these same issues in a previous state court action. Mr. Keyes's claims alleged in Count III were dismissed without prejudice, and leave to amend was granted to the extent that there were facts, if true, which supported his due process claims. Additionally, Mr. Yox's equal protection claim alleged in Count IV was dismissed without prejudice, and leave to amend was granted to the extent he possessed facts supporting this

claim.[4]

On November 17, 2015, Plaintiffs filed an Amended Complaint. (Doc. 24). The Amended Complaint includes a new cause of action, contained in Count V, in which both Plaintiffs allege claims under the NICS Improvement Amendments Act of 2007, Pub. L. No. 110–180, 122 Stat. 2559, ("NIAA"). On December 1, 2015, Defendants filed their Answer.

Plaintiffs filed their motion for summary judgment on January 11, 2016. (Doc. 28). Defendants filed their motion for summary judgment on February 11, 2016. (Doc. 33). In Plaintiffs' motion for summary judgment, they asked the Court to reconsider, *sua sponte*, Counts I and III with regard to Mr. Keyes, and we declined to do so. (Doc. 48, p. 11). On July 11, 2016, we granted Plaintiff's motion for summary judgment in part, upholding the Second Amendment as-applied challenge with regard to Yox and directed judgment in his favor. (Doc. 49). We otherwise granted Defendants' motion and entered judgment in favor of Defendants on all other claims. (*Id.*).

Our decision to uphold Plaintiff Yox's Second Amendment claim is in stark contrast to the Pennsylvania Superior Court's decision regarding Plaintiff Keyes' Second Amendment claim. The state court applied the Second Amendment framework from *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) to analyze and ultimately deny Keyes' Second Amendment claims. *In re Keyes*, 83 A.3d 1016, 1024 (Pa. Super. Ct. 2013), *appeal denied*, 627 Pa. 766, 101 A.3d 104 (2014). In our opinion regarding Yox's claims, which are for all material purposes identical to Keyes', we held that *Marzzarella* was the incorrect legal framework to apply, and instead found that the legal test of *United States v. Barton*, 633 F.3d 168 (3d. Cir. 2011) was the appropriate analytical lens with which to view as-applied Second Amendment claims.

Plaintiffs filed a motion to alter/amend judgment and to direct final judgment as to Plaintiff Yox on August 8, 2016. (Doc. 52). Defendants did not oppose entry of final judgment as for Plaintiff Yox, and we granted that part of the motion on August 29, 2016. (Doc. 56). Presently before the Court is Plaintiffs' Motion to alter/amend judgment as to our November 9, 2015 Order granting dismissal of Keyes' Second Amendment claim. (Doc. 52).

## III. STANDARD OF REVIEW

The Court notes that Plaintiffs styled the Motion as applied to Keyes as a motion under Federal Rule of Procedure 59(e). (Doc. 52, p. 1). Rule 59(e) requires the party to file a motion to alter or amend judgment "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Rule 6(b)(2) further provides that the Court may not extend the time allowed to file a Rule 59(e) motion. Fed. R. Civ. P. 6(b)(2). Plaintiffs filed their Rule 59(e) motion on August 8, 2016. (Doc. 52). While Plaintiffs style their argument as a motion to alter/amend our judgment of July 11, 2016, where we ordered summary judgment in favor of Yox, Plaintiffs are in reality asking the Court to revisit our November 9, 2015 Order of dismissal of Keyes' Second Amendment claims, certainly outside the 28 day limitation. We will exercise our discretion in considering the Motion as one under Rule 60(b) motion for relief from an Order. *See* Fed. R. Civ. P. 60(c); *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) ("[w]here, as here, the

---

4. Because Plaintiffs did not amend Count III as to Mr. Keyes, or Count IV as to Mr. Yox, these counts are deemed dismissed with prejudice pursuant to our November 2015 Memorandum & Order.

motion is filed outside of the [28] days provided for under Rule 59(e) but within the year permitted under Rule 60(b), and the motion may be read to include grounds cognizable under the latter rule, we will consider it to have been filed as a Rule 60(b) motion.").

Because the Motion does not fit within any of the enumerated reasons for relief of Rule 60(b)(1)–(5), it is a Motion under Rule 60(b)(6), the catchall provision allowing the Court to grant relief for "any other reason" that is justifiable. Fed. R. Civ. Pro. 60(b)(6). Under this provision, the parties are instructed to file within a "reasonable time." Fed. R. Civ. Pro. 60(c)(1). Plaintiffs filed the Motion less than a month after our Order granting summary judgment to Yox, the Order which serves as the basis for Plaintiffs' "change of law" argument to reopen our judgment as to Keyes. (Doc. 52). The Court finds that to be a reasonable time and we shall thus proceed to consider the Motion under Rule 60(b)(6).

Courts have made clear that "a party seeking relief under Rule 60(b)(6) must demonstrate the existence of extraordinary circumstances that justify reopening the judgment." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (internal citations omitted). This requirement is in place to balance out the broad language of Rule 60(b)(6), providing a Court with the power to grant relief for any justifiable reason, with the interest in preserving finality of judgments. *Id.* The moving party bears a substantial burden to show exceptional circumstances that "absent such relief an extreme and unexpected hardship will result." *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977) (internal quotations omitted).

## IV. DISCUSSION

The Motion before us presents two distinct issues, albeit with analyses that intertwine and inform upon one another. First, we must determine whether the law permits us to reopen and alter our previous Order granting the Defendants' motion to dismiss. Second, if we are to reconsider our Order of dismissal, we must determine whether, in light of new advancements in the legal framework, issue preclusion still bars Plaintiff Keyes' Second Amendment claim.

## A. The Law of the Case

 In determining whether Plaintiffs have shown exceptional circumstances that would encourage the Court to revisit its Order of dismissal under Rule 60(b), we first turn to the law of the case doctrine. The law of the case refers to the general rule for courts to avoid reopening questions that it has already decided. "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). The law of the case doctrine is a "rule of discretion rather than a limit on authority." *Schneyder v. Smith*, 653 F.3d 313, 331 (3d Cir. 2011). The doctrine does not act as a bar to re-litigation of a previously decided issue, but reflects the court's discretion to not rehear matters. *In re Broadstripe*, LLC, 435 B.R. 245, 255 (Bankr. D. Del. 2010).

In *Schneyder*, the Third Circuit enunciated three examples of extraordinary circumstances and stated that the law of the case doctrine does not discourage revisiting a previous Order when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.*, at 331–332. Plaintiffs argue that both the second and the third situations are applicable to this

case and justify revisiting our Order. (Doc. 53, p. 7–11).

■ Plaintiffs argue that our ruling in favor of Yox, where we found that *Marzzarella* was not the correct legal framework for as applied Second Amendment challenges, constitutes a supervening new law that encourages the Court to revisit our Order. (*Id.*, at p. 7). In addition, Plaintiffs invoke the unique factual circumstances of this case, where one Plaintiff has received relief and the other, who is in a materially identical situation, did not, to show that Keyes will suffer manifest injustice without our review of the dismissal. (*Id.* at p. 11). Defendants counter by arguing that our change in the Second Amendment as applied challenge framework does not constitute a supervening change of law for the purposes of the law of the case exception because we dealt with the law of issue preclusion in our Order of dismissal, not the Second Amendment. (Doc. 56, p. 9). Defendants argue that the correct inquiry is whether there has been any supervening change in the law of issue preclusion, as that is the law our Order relied upon. (*Id.*). Further, Defendants state that "the circumstances here are anything but extraordinary." (*Id.*).

■ We agree with the Defendants that the normal, strict interpretation of the "supervening change of law" exception refers to a change in the law that the previous order was premised upon; we did not use Second Amendment law in deciding that issue preclusion barred Keyes' claims. However, "the law-of-the-case doctrine is not uniformly rigid in its application but rather permits a measure of flexibility and discretion on the part of the successor judge." *United States v. Wecht*, 619 F.Supp.2d 213, 223 (W.D. Pa. 2009). While we may not have relied upon Second Amendment law, our subsequent finding that the state court used the incorrect legal framework in considering Keyes' claim has a substantial impact on our issue preclusion inquiry; as discussed more fully in the next section, our finding for Yox marked a substantial change in the legal context that requires a departure from the general rules of issue preclusion in order to avoid inequitable administration of the law. The law that predicated our Order of dismissal may not have changed, but our supervening change of the Second Amendment legal framework has changed the issue preclusion inquiry altogether.

■ Further, we sharply disagree with Defendants and believe that this case represents extraordinary circumstances, and that Keyes will suffer manifest injustice should we refuse to revisit our Order of dismissal. Keyes' factual background is less developed than Yox's because discovery did not proceed in his case, but the material facts are the same. Both Keyes and Yox were each once involuntarily committed for health concerns. (Doc. 48, p. 6). As a result, both Plaintiffs lost their private capacity firearm rights. (*Id.*, at p. 8). Notwithstanding their inability to possess firearms in a private capacity, both Keyes and Yox regularly carried and used firearms in their professional capacities. (*Id.*). Keyes is a former Master Trooper with the Pennsylvania State Police and Yox is a state correctional officer. (*Id.*, at p. 5). Both Plaintiffs were adjudged by the Pennsylvania state court to no longer pose a risk to themselves or others due to mental illness and were thus relieved of their state firearm disabilities. (*Id.*, at 9–10). However, because Congress has not funded and Pennsylvania has not established a mechanism to petition for relief from federal firearm disabilities, both were left without recourse to challenge their loss of private gun rights under federal law. (*Id.*, at 10).

Based upon the record before us, the only material difference between Plaintiffs Keyes and Yox is that Keyes asserted his Second Amendment rights in Pennsylvania state court first. Both Plaintiffs previously filed actions in Pennsylvania state court seeking the expungement of their mental health adjudications and were denied. (Doc. 29, p. 6). Unlike Yox, Keyes appealed his denial and lodged a Second Amendment challenge, which was denied by the Superior Court of Pennsylvania. (Doc. 11, p. 4). It was after this denial that the Plaintiffs joined one another in filing an action with this Court.

While the Superior Court denied Keyes' Second Amendment challenge, we granted Yox relief upon materially identically factual and legal circumstances. In doing so, we departed substantially from the Superior Court's analysis and found that the state court used the incorrect legal framework. The result is that Keyes is left behind while his co-Plaintiff receives full relief simply because Keyes pursued his Second Amendment claims in what turned out to be the wrong court. He is left with no recourse to receive vindication of his constitutional right to bear arms, even though this Court has, for all material purposes, made clear that his claim has full merit. This is a grossly unfair and inequitable result.

Considering the extraordinary circumstances presented in this case, we conclude that the law of the case doctrine does not preclude us from revisiting our Order of dismissal of Keyes' Second Amendment claims. As discussed, the law of the case doctrine is not a rule of jurisdictional limitation, but rather a rule of caution towards disrupting the finality of judgments. *In re Engel*, 124 F.3d 567, 583 (3d Cir. 1997) ("the law of the case doctrine does not impose a strait-jacket on the court's ability to reconsider issues previously decided.

The doctrine simply 'directs a court's discretion, it does not limit the tribunal's power.'") (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). In consideration of the unusual posture of this case and the new Second Amendment framework put forth by our holding for Yox, we find that the interests of justice and fairness are best served by revisiting our Order of dismissal as to Keyes.

### B. Issue Preclusion

■ Having found that we can properly revisit our Order of dismissal, we now turn to the crucial inquiry of whether our ruling should be different in light of our shift of Second Amendment law. That inquiry turns upon whether the unique circumstances of Keyes' case warrant a departure from the general rules of issue preclusion. We hold that it does.

■ Issue preclusion "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). In our previous Order, we found that all four elements of issue preclusion were met: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Id.* at 175 (internal quotations omitted). Keyes adamantly argued that he had raised a facial Second Amendment challenge in state court, and that it should be treated as a distinct issue from his current as-applied challenge, but we ultimately found that the "relevant inquiry is instead whether the same issue of fact or law was raised and determined in the prior proceeding." (Doc. 21, pp. 11–12).

Keyes now re-argues that he only raised a facial challenge in state court, bolstering his argument with our holding that the

state court used the *Marzzarella* framework, which is appropriate for facial challenges, rather than the *Barton* framework, which is most appropriate for as applied challenges. (Doc. 53, p. 8). We stand firm in finding that the strict element of the "same issue" is met, even though the state court used the incorrect legal framework. Keyes raised his Second Amendment claim in state court, and that court at least purported to conduct an as applied analysis in ruling on his claim. Accordingly, Keyes does not find relief from issue preclusion upon this argument.

■ However, the Third Circuit has recognized that the general rule of issue preclusion "is subject to a number of equitable exceptions designed to assure that the doctrine is applied in a manner that will serve the twin goals of fairness and efficient use of private and public litigation resources." *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002). To be sure, "[e]ven when the requirements of the general rule of collateral estoppel are satisfied, the Court must consider whether there are special circumstances present which make it inequitable or inappropriate to foreclose relitigation of a previously determined issue." *Id.*, at 528. The Third Circuit pointed to Section 28 of the Restatement Second, where it outlines several equitable factors to consider in deciding whether to depart from the general rules of issue preclusion. *Id.*, at 525, footnote 3. The section lists several circumstances where, "[a]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded." Restatement (Second) of Judgments § 28 (1982). The third of the enumerated circumstances where issue preclusion should not be ap-

plied is where "[t]he issue is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." *Id.*

Thus, a "material change in the law or development in the controlling legal principles may vitiate issue preclusion." *Berwind Corp. v. Apfel*, 94 F.Supp.2d 597, 611 (E.D. Pa. 2000). Courts have recognized that "an intervening judicial declaration, a modification or clarification of legal principles as enunciated in intervening decisions and an alteration in a pertinent statutory interpretation" have qualified as sufficiently significant changes of law to avoid issue preclusion. *Id.*; *see C.I.R. v. Sunnen*, 333 U.S. 591, 601, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Bingaman v. Department of Treasury*, 127 F.3d 1431, 1437–38 (Fed. Cir. 1997) ("a significant change in the 'legal atmosphere'—whether in the form of new legislation, a new court decision, or even a new administrative ruling—can justify a later court's refusal to give collateral estoppel effect to an earlier decision"); *Graphic Communications Int'l Union, Local 554 v. Salem–Gravure Div. of World Color Press, Inc.*, 843 F.2d 1490, 1493 (D.C. Cir. 1988) (subsequent agency reinterpretation of statutory provision); *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 (5th Cir. 1979) (no preclusion for issue resolved according to precedent subsequently overruled by Supreme Court); *Texaco, Inc. v. United States*, 217 Ct.Cl. 416, 579 F.2d 614, 617 (1978) (intervening decision of Supreme Court); *Chicago and Illinois Midland Railway Co. v. Marsh*, 577 F.Supp. 798, 806 (C.D. Ill. 1984) (intervening Supreme Court decision); *U.S. v. General Elec. Co.*, 358 F.Supp. 731, 741–42 (S.D.N.Y. 1973) (significant change in Supreme Court antitrust doctrine).

While this exception is not invoked often, the Supreme Court has provided limited support for it. *See State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162, 65 S.Ct. 573, 89 L.Ed. 812 (1945) (observing that "res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation."). Sources suggest that this exception is especially appropriate when the underlying issue is a constitutional right. *See Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1380–81 (Fed. Cir. 2008); 18 James Wm. Moore et al., Moore's Federal Practice § 131.21(2) (3d ed. 2015); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4415 (2d ed. 2002). In *Berwind*, the Eastern District of Pennsylvania found that "[a]lthough there literally ha[d] been no change in the pertinent principles of constitutional law... [an] intervening clarification of rights of persons in [plaintiff's] position" constituted a significant change of the legal atmosphere so as to prevent issue preclusion. 94 F.Supp.2d at 611–612.

Upon further review, we apprehend that our holding for Yox constituted a significant change in the legal atmosphere and justifies a departure from the general rules of issue preclusion. Keyes' situation presents an exact example for an "intervening change in the applicable legal context" and an "inequitable administration of the laws." Restatement (Second) of Judgments § 28 (1982). Our holding for Yox clarified the applicable legal framework for Second Amendment as applied challenges and sharply departed from the framework used by the state court for Keyes. One Plaintiff has been afforded full constitutional relief, while the other, materially identical Plaintiff has been barred from asserting his constitutional rights. We would be hard pressed to think of a better example of an inequitable administration of the laws, and it is a circumstance that cries out to be rectified.

At the moment, Keyes is, quite literally, a man without a remedy. The operation of federal statute is limiting his Second Amendment right to keep and bear arms and, were we to bar his claim under issue preclusion, he has no recourse to challenge it under the correct legal framework. The justice system has left him behind in a procedural limbo where his challenges will consistently be blocked by the judicial system because he happened to go to state court first.

At bottom, this Court is duty-bound to apply the laws in a fashion that affords justice to all parties. We should not descend into all of the nuances of a strict application of issue preclusion, but recognize that the judicial system is meant to provide means by which citizens can be meaningfully heard. Keyes' Second Amendment claim was quickly washed away in the Superior Court-held to be inadequate in the light of a difficult *Marzzarella* facial challenge. If judged by the correct legal standard of *Barton*, Keyes would likely be in the same position as his co-Plaintiff Yox and have his right to bear arms restored. Strict adherence to procedural doctrine is not appropriate where a man's constitutional rights hang in the balance. Such is the case here. The change of law exception to issue preclusion is for the purpose of avoiding inequitable administration of the laws, and that is exactly what would occur if the Court were to stand behind the general application of issue preclusion to this anything-but-general case. The matter before us is undoubtedly unique, and calls the Court to act in the interests of fairness, justice, and an equitable administration of the laws. For those reasons, the Court shall grant Plain-

tiffs' Motion and reopen Keyes' Second Amendment claim.

## V. CONCLUSION

Because of the foregoing analysis, we conclude that the law of the case doctrine does not preclude us from amending our Order of dismissal, and that justice demands that we hold that issue preclusion no longer applies to Keyes' claims. Our alteration of the legal atmosphere surrounding as applied challenges constitutes a significant change of circumstances, and would have the effect of providing an inequitable administration of the laws. To prevent manifest injustice towards Keyes, Plaintiffs' Motion is granted.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The November 9, 2015 Order of this Court (Doc. 21) is **AMENDED** to reflect our **DENIAL** of Defendants' Motion to Dismiss for Failure to State a Claim as to Count I. (Doc. 10).

2. Within ten (10) days of the date of this Order, the parties shall stipulate to a new trial term. A copy of this Court's case management calendar is attached for the convenience of the parties.

Attachment

**Judge Jones
2017 Court Calendar
(Revised 8/12/16 date changes\*)**

| Trial List | Discovery Cut-off | Dispositive Motions Cut-off | Final Pre-Trial Conferences | Jury Selection |
|---|---|---|---|---|
| January | 7/29/16 | 9/1/16 | 12/1/16 | 1/10/17* |
| February | 8/30/16 | 10/3/16 | 1/9/17* | 2/2/17 |
| March | 9/30/16 | 11/1/16 | 2/1/17 | 3/2/17 |
| April | 10/31/16 | 12/1/16 | 3/1/17 | 4/10/17* |
| May | 11/30/16 | 1/3/17 | 4/3/17 | 5/2/17 |
| June | 12/30/16 | 2/1/17 | 5/1/17 | 6/2/17 |
| July | 1/31/17 | 3/1/17 | 6/1/17 | 7/6/17 |
| August | 2/28/17 | 4/3/17 | 7/5/17 | 8/2/17 |
| September | 3/31/17 | 5/1/17 | 8/1/17 | 9/5/17 |
| October | 4/28/17 | 6/1/17 | 9/1/17 | 10/10/17 |
| November | 5/31/17 | 7/3/17 | 10/2/17 | 11/2/17 |
| December | 6/30/17 | 8/1/17 | 11/1/17 | 12/4/17 |